**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Misty J. DERK, Appellant.**

**Commonwealth of Pennsylvania,**
**Appellee,**

v.

**Kurt Rodney Bingaman, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 29, 2005.

Filed March 23, 2006.

Robert H. Steinberg, Middleburg, for appellants.

Michael H. Sholley, Asst. Dist. Atty., Middleburg, for Com., appellee.

BEFORE: JOYCE, ORIE MELVIN and TAMILIA, JJ.

OPINION BY JOYCE, J:

¶ 1 In these consolidated appeals, Appellants Misty Derk and Kurt Bingaman each appeal their judgments of sentence entered March 29, and March 3, 2005, respectively, in the Court of Common Pleas of Snyder County. They both contend that the trial court erred in requiring them to submit a deoxyribonucleic acid (DNA) sample to be stored in a DNA data bank and pay a mandatory cost of $250. These provisions were ordered pursuant to 44 Pa.C.S.A. §§ 2301–2336 (hereinafter the "DNA Act" or "Act"), relating to DNA data and testing.[1] After careful review, we find that the trial court did not err in ordering Derk to submit a DNA sample and affirm her judgment of sentence. However, since Bingaman does not fall within the purview of the DNA Act, it was an error for the trial court to order him to comply with its provisions and his judgment of sentence is reversed in part.

¶ 2 The statutory authority requiring certain defendants to provide a DNA sample is found at 44 Pa.C.S.A. §§ 2301–2336. Section 2316 provides:

(a) General rule.—A person who is convicted or adjudicated delinquent for a felony sex offense or other specified offense or who is or remains incarcerated for a felony sex offense or other specified offense on or after the effective date of this chapter shall have a DNA sample drawn as follows:

(1) A person who is sentenced or receives a delinquency disposition to a term of confinement for an offense covered by this subsection shall have a DNA sample drawn upon intake to a prison, jail or juvenile detention facility or any other detention facility or institution. If the person is already confined at the time of sentencing or adjudication, the person shall have a DNA sample drawn immediately after the sentencing or adjudication. If a DNA sample is not timely drawn in accordance with this section, the DNA sample may be drawn any time thereafter by the prison, jail, juvenile detention facility, detention facility or institution.

(2) A person who is convicted or adjudicated delinquent for an offense covered by this subsection shall have a DNA sample drawn as a condition for any sentence or adjudication which disposition will not involve an intake into a prison, jail, juvenile detention facility or any other detention facility or institution.

(3) Under no circumstances shall a person who is convicted or adjudicated delinquent for an offense covered by this subsection be released in any manner after such disposition unless and until a DNA sample has been withdrawn.

(b) Condition of release, probation or parole.—

(1) A person who has been convicted or adjudicated delinquent for a felony sex offense or other specified offense and who serves a term of confinement in connection therewith after June 18, 2002, shall not be released in any manner unless and until a DNA sample has been withdrawn.

---

1. Formerly the Act of June 19, 2002, P.L. 394, No. 57, 42 Pa.C.S. §§ 4701–4741 which repealed the Act of May 28, 1995, P.L. 1009, §§ 101–1102, codified at 35 P.S. §§ 7651.101–7651.1102.

(2) This chapter shall apply to incarcerated persons convicted or adjudicated delinquent for a felony sex offense prior to June 19, 2002.

(3) This chapter shall apply to incarcerated persons and persons on probation or parole who were convicted or adjudicated delinquent for other specified offenses prior to the effective date of this paragraph.

. . .

(d) Supervision of DNA samples.—All DNA samples taken pursuant to this section shall be taken in accordance with regulations promulgated by the State Police in consultation with the Department of Corrections.

(d.1) Mandatory submission.—The requirements of this chapter are mandatory and apply regardless of whether a court advises a person that a DNA sample must be provided to the State DNA Data Base and the State DNA Data Bank as a result of a conviction or adjudication of delinquency. A person who has been sentenced to death or life imprisonment without the possibility of parole or to any term of incarceration is not exempt from the requirements of this chapter. Any person subject to this chapter who has not provided a DNA sample for any reason, including because of an oversight or error, shall provide a DNA sample for inclusion in the State DNA Data Base and the State DNA Data Bank after being notified by authorized law enforcement or corrections personnel. If a person provides a DNA sample which is not adequate for any reason, the person shall provide another DNA sample for inclusion in the State DNA Data Base and the State DNA Data Bank after being notified by authorized law enforcement or corrections personnel.

(e) Definition.—As used in this section, the term "released" means any release, parole, furlough, work release, prerelease or release in any other manner from a prison, jail, juvenile detention facility or any other place of confinement.

44 Pa.C.S.A. § 2316. Additionally, § 2322 states that, except for a finding that undue hardship will result, "a mandatory cost of $250, which will be in addition to any other costs imposed pursuant to statutory authority, shall automatically be assessed on any person convicted [of] . . . a felony sex act or other specified offense. . . ."

¶ 3 "A trial court's application of a statute is a question of law, and our standard of review is plenary. Moreover, our review is limited to determining whether the trial court committed an error of law." *Commonwealth v. Wall,* 867 A.2d 578, 580 (Pa.Super.2005). With these standards in mind, we now turn to consider each of the appeals before us.

### Commonwealth v. Misty Derk 586 MDA 2005

¶ 4 On July 21, 2003, Derk was arrested for retail theft after she was caught stealing a carton of cigarettes. Since she had two prior retail theft convictions, the offense was graded a felony of the third degree pursuant to 18 Pa.C.S.A. § 3929(b). Derk entered a guilty plea on March 19, 2005, and was immediately sentenced to five years of probation. Additionally, the court ordered that she submit a DNA sample to be stored in a DNA data bank and pay a mandatory cost of $250.00

¶ 5 Derk filed a post-sentence motion challenging the mandate that she submit a DNA sample and pay the assessment fee as violations of the *ex post facto* clauses of the United States and Pennsylvania Constitutions. The motion was denied and a timely appeal was filed. Derk was or-

**626**

dered to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), with which she complied. In her appeal, she alleges that the trial court abused its discretion in requiring her to supply a DNA sample and to pay the associated $250 assessment.

¶ 6 Initially, Derk argues that the trial court erred in requiring her to submit a DNA sample because her retail theft conviction is not a predicate offense as contemplated by the DNA Act. Derk contends that the legislature only sought to receive DNA samples from those person convicted of sex offenses or violent offenses. We disagree.

¶ 7 The general rule states that those who are convicted of a felony sex offense or "other specified offense" shall have a DNA sample drawn. 44 Pa.C.S.A. § 2316(a). An "other specified offense" is "**a felony offense** or an offense under 18 Pa.C.S. § 2910 (relating to luring a child into a motor vehicle) or 3126 (relating to indecent assault) or an attempt to commit such an offense." 44 Pa.C.S.A. § 2303 (emphasis added). Contrary to Derk's assertions, we find that the General Assembly made its intentions known that the Act encompasses all convicted felons, no matter what the crime, by including simple and straightforward language to that effect. Since Derk's retail theft conviction was graded as a felony of the third degree, it is a qualifying offense, and she is subject to the mandates of the Act and must submit a DNA sample. Thus, this argument fails.

¶ 8 Derk next contends that she committed her crime before the amended version of the statute came into effect and subjecting her to its strictures constitutes an *ex post facto* violation.[2] The application of an *ex post facto* law is in contradiction of Article 1, § 10 of the United States Constitution and Article 1, § 17 of the Pennsylvania Constitution. "A state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and 'inflicts a greater punishment than the law annexed to the crime, when committed.'" *Wall, supra,* citing *Commonwealth v. Fleming,* 801 A.2d 1234, 1236 (Pa.Super.2002). There is no *ex post facto* violation if the legislation is not penal in nature, but is merely procedural. *Commonwealth v. Kline,* 695 A.2d 872 (Pa.Super.1997), *alloc. denied,* 552 Pa. 694, 716 A.2d 1248 (1998).

¶ 9 In determining whether a legislative enactment is unconstitutionally punitive, a two part test is utilized. First, it must be determined whether the legislative intent was to punish. If not, then the purpose and effect of the statute will be evaluated to assess whether it "nevertheless provide[s] for sanctions so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty." *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962, 971–972 (2003), citing *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). This latter prong encompasses an analysis of a non-exhaustive list of considerations including: "(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded

**2.** At the time Appellant committed her offense, the prior version of the DNA Act was in place. Under that version, those convicted of or adjudicated delinquent of a felony sex offense or other specified offense were required to submit DNA samples. An other specified offense was not as broadly defined as it is in the current statute, and included those convicted of, or attempting, conspiring, or soliciting to commit the offense of murder, harassment and stalking, kidnapping, luring a child into a motor vehicle, indecent assault, burglary, or robbery. 42 Pa.C.S.A. § 4703 (repealed).

as punishment; (3) whether it comes into play only on finding of scienter; (4) whether its operation will promote traditional aims of punishment; (5) whether behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to an alternative purpose." *Williams,* 832 A.2d at 973, citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).[3]

▮ ¶ 10 Turning to the first prong of the test, there is no doubt that the General Assembly did not intend to punish when enacting the DNA Act. When a legislative restriction "is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power and not a purpose to add to the punishment." *Flemming v. Nestor,* 363 U.S. 603, 616, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). As stated in § 2302, the policy considerations behind the Act were to aid in criminal investigations, and to deter and detect recidivist acts. Additionally, § 2318 states any tests performed on a

DNA sample are to be used for assistance in identifying or recovering human remains from disasters or for other humanitarian identification purposes, in addition to law enforcement. By establishing a DNA bank, perpetrators of future criminal acts can be more quickly apprehended, and those otherwise considered suspects can be excluded. Society will benefit by the systematic utilization of science to detect and deter crime, and the remedial goal of public safety will be that much more attainable. Thus, we conclude that the legislative intent behind enacting the DNA Act was not to punish, but to promote public safety and more effective law enforcement.[4] Now we must determine whether, despite the General Assembly's intent that the submission of a DNA sample be non-punitive, that the requirement is nonetheless punitive in its application so to result in a criminal penalty. Only the "clearest proof" will substantiate such a finding, since we presume the constitutionality of a statute. *Williams,* 832 A.2d at 973; 1 Pa.C.S.A. § 1922.

¶ 11 As set forth above, the United States Supreme Court has provided a set

---

3. These guideposts are used to assess a variety of constitutional questions. As discussed *infra,* in the context of evaluating an *ex post facto* challenge, not all of these would be applicable.

4. This decision is consistent with the Commonwealth Court's holding in *Dial v. Vaughn,* 733 A.2d 1 (Pa.Cmwlth.1999) where the Court rejected a challenge to the prior version of the DNA Act on *ex post facto* grounds. The Court reasoned, "The collection of blood for identification and establishment of a DNA data bank is, like fingerprinting and photographing, a non-penal, administrative requirement." *Id.* at 5. We completely agree with the holding in *Dial* but chose not to rely on it heavily because the *ex post facto* analysis has changed since our Supreme Court's decision in *Williams, supra.* It appears that this Court accepted the Commonwealth Court's rationale in *Dial* in *Commonwealth v. Lee,* 820

A.2d 1285, 1287 (Pa.Super.2003). In that case, we rejected Lee's contention that his guilty plea was unlawfully induced due to trial counsel's failure to inform him of the requirements of 35 P.S. § 7651.306, a prior version of the DNA Act. In doing so, we found that the requirements of 35 P.S. § 7651.306 are a collateral consequence of a guilty plea, citing *Dial.*

This decision also comports with that of many other jurisdictions, which have rejected challenges to their state's version of the DNA Act on *ex post facto* grounds. *See State v. Raines,* 383 Md. 1, 857 A.2d 19 (2004); *Jones v. Murray,* 962 F.2d 302, 309 (4th Cir.1992); *Johnson v. Quander,* 370 F.Supp.2d 79 (D.D.C.2005); *Gilbert v. Peters,* 55 F.3d 237 (7th Cir.1995); *Morrow v. State,* 914 So.2d 1085 (Fla.App.2005); *United States v. Reynard,* 220 F.Supp.2d 1142 (S.D.Cal.2002).

of guideposts in determining whether a regulatory scheme is nonetheless punitive. In *State v. Raines*, 383 Md. 1, 857 A.2d 19 (2004), the Maryland Court of Appeals utilized these factors in rejecting the contention that Maryland's DNA Collection Act was an *ex post facto* violation of the United Sates Constitution and the Maryland Declaration of Rights. In conducting its review, the court concluded that "The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Raines*, 857 A.2d at 38, citing *Smith v. Doe*, 538 U.S. 84, 97, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).[5] Using these guideposts more specifically tailored to an *ex post facto* analysis, we will now turn to the second prong of the test to determine whether the statute is so punitive in its application that it negates the legislative intent that it be regulatory.

¶ 12 The first consideration is whether the contested requirement has historically been regarded as punishment. A historical analysis can serve the purpose of determining whether a statute is punitive since "a State that decides to punish an individual is likely to select a means deemed punitive in our tradition, so that the public will recognize it as such." *Smith*, 538 U.S. at 97 123 S.Ct. 1140. Traditionally, various forms of punishment existed such as shaming, branding, humiliation, banishment, and stocks. *Smith, Raines, Williams, supra*. Clearly, the application of the DNA Act does not result in these varieties of punishment since the defendant is not subjected to public shame or humiliation. Indeed, the identity of the person who submitted a sample contained in the DNA data bank or whose profile is in the data base is not accessible to the public, but only to statutorily authorized persons or agencies. Thus, the application of the Act does not result in these historical forms of punishment.

¶ 13 Of course, incarceration is the most severe and recognized form of punishment. However, no incarceration results by way of a new criminal conviction from the refusal to submit a sample. *Cf. Johnson v. Quander, supra* (DNA Act is not violative of the *ex post facto* clause even though refusing to provide a sample results in a misdemeanor offense). We are cognizant of the fact that an incarcerated person "shall not be released in any manner unless and until a DNA sample has been withdrawn" and that the use of reasonable force to obtain the sample is authorized. §§ 2316(b)(1) and 2317. However, the Commonwealth Court has held that the Act's requirement that an inmate not be paroled until he/she supplies a DNA sample is not an application of an *ex post facto* law. *Dial, supra*. The Court noted that prisoners who refuse to provide a DNA sample can be administratively punished and that such punishment would not violate the *ex post facto* clause. *Id.* at 6. Additionally, the court reasoned that "whatever punishment or disadvantage is imposed results, not by reason of conduct that took place before enactment of the statute, so as to become retrospective, but from conduct that occurred after enactment in refusing to comply with reasonable regulation." *Id.* citing *Jones v. Murray*, 962 F.2d 302 (4th Cir.), *cert denied*, 506 U.S. 977, 113 S.Ct. 472, 121 L.Ed.2d

---

**5.** In *Smith*, the United States Supreme Court held that the Alaska Sex Offender Registration Act did not violate the *ex post facto* clause.

378 (1992). Moreover, many of our sister states have also upheld their versions of the DNA Act in the face of an *ex post facto* challenge when parole was denied or an administrative penalty imposed until the sample was given. *See Gilbert v. Peters, supra; Jones v. Murray, supra; Kruger v. Erickson,* 875 F.Supp. 583, 589 (D.Minn. 1995). These courts have considered the traditional objectives and constitutional jurisprudence involving the *ex post facto* clause and found that the requirement that a defendant supply a DNA sample is not punitive. We find no basis upon which to disagree. Thus, a historical analysis leads us to conclude that the Act is not punitive in its application.

¶ 14 Next, we shall determine whether the Act imposes an affirmative disability or restraint upon those who fall within its purview. An affirmative disability or restraint has traditionally been viewed as imprisonment or something akin to it or a "restraint upon the individual directly, rather than through a secondary effect." *Williams,* 832 A.2d at 974. A person who is required to submit a sample is only subject to a momentary inconvenience and then is free to live their life in any manner they please within the boundaries of the law. The mandate that he/she supply a DNA sample is only a secondary effect, or a collateral consequence of the conviction, and does not result in any further punishment or change the length of the sentence he/she has already been ordered to serve. *See Lee, supra.* Moreover, in *Raines, supra,* the court considered the fact that, unlike the registration requirements of Megan's Law which have been upheld as nonpunitive despite the widespread dissemination of the information via the Internet, the information in the data bank is not available to the public. Such is true in the case *sub judice;* the compilation of data in the DNA data bank and data base is confidential and only disclosed to statutorily authorized agencies and individuals. It is not for public dissemination, and those who disclose the information who are otherwise prohibited from doing so are subject to criminal and civil penalties. When compared to the more stringent registration requirements under Megan's Law, which have been found not to be punitive, it is clear that there is no undue restraint or affirmative disability resulting from the DNA Act either.

¶ 15 Another factor we are to consider is whether the DNA Act nonetheless promotes the traditional aims of punishment—retribution and deterrence. It is evident that there is no retributive aspect to the Act because, as we have already discussed, submitting a DNA sample does not constitute punishment. However, the Act plainly states "DNA data banks are an important tool in criminal investigations, in the exclusion of individuals who are the subject of criminal investigations or prosecutions and **in deterring and detecting recidivist** acts." 44 Pa.C.S.A. § 2302(1) (emphasis added). Plainly, the deterrence to anyone who may have his/her DNA sample in the data bank is the idea that it may be used to convict him/her of another crime. However, the mere presence of a deterrent purpose does not render a measure criminal, particularly where the requirement is related to deterring recidivism and is consistent with the regulatory objective. "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ... would severely undermine the Government's ability to engage in effective regulation." *Raines,* 857 A.2d at 41, quoting *Smith, supra.* Here, the deterrence aspect is only one facet of the DNA Act since it is otherwise utilized in solving pre-existing crimes, identifying victims of natural disasters, and can be used to exonerate those wrongly convicted.

Additionally, the deterrence of repeat crime is consistent with the purpose of the DNA Act to promote public safety. Hence, we conclude that the Act is not directed at the traditional aims of punishment—retribution and deterrence.

¶ 16 The Act's rational connection to a nonpunitive purpose is a "[m]ost significant" factor in our determination that the statute's effects are not punitive. *Smith*, 538 U.S. at 102 123 S.Ct. 1140. "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* Presently, those that are convicted of a certain category of crimes are required to give a DNA sample to be stored in the DNA data base and data bank. The utilization of DNA is a technologically modern, efficient manner of accomplishing the stated purposes of the Act. It will serve to enhance the apprehension and conviction of those who have committed crimes and also serve to eliminate innocent suspects. Additionally, it can serve as a vital function in identifying human remains in the event of a natural disaster or other tragic occurrence. We can perceive of no greater of a rational connection between the purpose of the Act and its enforcement.

¶ 17 Lastly, we find that the application of the Act is not excessive in relation to its purpose. One who is required to provide a sample is only subjected to a momentary inconvenience on a single occasion. In return, the Commonwealth is able to create and maintain a data base that will comport with modern capabilities in law enforcement, as well as assist in a variety

of humanitarian efforts. It is also noteworthy that the Act applies to a broad class of people and is not targeting a single type of perpetrator in a manner that may suggest excessiveness. The submission of the sample cannot be said to be excessive in relation to the purpose of the Act.

¶ 18 In sum, we find that the General Assembly did not intend the DNA Act to constitute punishment. Moreover, there is no clear proof that the requirement that persons convicted of predicate offenses submit a DNA sample is so punitive in its effect to transform the remedial provision into a criminal penalty. Accordingly, we conclude that the DNA Act is not an unconstitutional violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions since it is not punitive in nature or by its application, but instead serves a regulatory purpose designed to enhance public safety. Thus, the trial court did not err in requiring Derk to provide a sample of her DNA.[6]

¶ 19 Derk's judgment of sentence is affirmed.

### Commonwealth v. Kurt Bingaman
### 591 MDA 2005

¶ 20 On April 6, 2004, Bingaman and a cohort entered Boscov's Department Store on two separate occasions, each time stealing a ski jacket. He was apprehended that same day and charged with two counts each of retail theft and criminal conspiracy. On January 6, 2005, Bingaman entered a guilty plea to two counts of retail theft; one count was graded as second degree misdemeanor and the other

---

**6.** Appellant also challenged the $250 mandatory cost imposed upon her. She argues that the imposition of the cost violates the *ex post facto* clauses of the United States and Pennsylvania constitutions and that she was not subject to the cost because she was not convicted of a predicate offense. Since we have already determined that the DNA Act does not constitute an *ex post facto* violation, and that Appellant's third degree felony conviction is a predicate offense under the Act, this argument necessarily fails.

was graded as a first degree misdemeanor. He was sentenced on March 3, 2005, to serve a term of incarceration of five days to twenty-three months at each count, to be served concurrently. He was also ordered to submit a DNA sample to be stored in a DNA data bank and pay a mandatory cost of $250.

¶ 21 Bingaman filed a post-sentence motion, which was denied. He then filed a timely appeal alleging that the trial court erred in ordering him to submit a DNA sample and pay the $250 assessment. In his appeal, he contends that he should not have been subject to the Act because his guilty plea preceded the enactment of 44 Pa.C.S.A. §§ 2301–2336, and its application was a violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions. He also argues that his misdemeanor retail theft convictions are not predicate offenses under the Act. Since we have already determined that the DNA Act is not in contradiction of the prohibition against *ex post facto* laws, we will now turn to Bingaman's second contention.

¶ 22 The general rule states that those who are convicted of a felony sex offense or "other specified offense" shall have a DNA sample drawn. 44 Pa.C.S.A. § 2316(a). An "other specified offense" is "a felony offense or an offense under 18 Pa.C.S. § 2910 (relating to luring a child into a motor vehicle) or 3126 (relating to indecent assault) or an attempt to commit such an offense." 44 Pa.C.S.A. § 2303. Obviously, Bingaman's misdemeanor retail theft convictions are not predicate offenses under the Act. However, in 1997, when Bingaman was thirteen years old, he was adjudicated delinquent for trespassing on Conrail property. The trespass adjudica-

tion was graded as a felony of the second degree. Additionally, Bingaman was incarcerated at the time he was sentenced.[7]

¶ 23 The trial court noted that § 2316(b)(3) states that "this chapter shall apply to incarcerated persons and persons on probation or parole who were convicted or adjudicated delinquent for other specified offenses prior to the effective date of this paragraph." The trial court reasoned that Bingaman was an incarcerated person who had been convicted of an other specified offense prior to the effective date of the Act and concluded that the Act applied. We disagree.

¶ 24 In *Smith v. Department of Corrections*, 837 A.2d 652 (Pa.Cmwlth.2003), the Commonwealth Court considered the Department's preliminary objections to Smith's petition to enjoin the Department from taking a DNA sample. In 1978, Smith was convicted of robbery and burglary and received a sentence of ten to twenty years of incarceration. In 1991, Smith began to serve an eleven to twenty-two year sentence for an undisclosed crime. Thus, he was incarcerated when the first version of the DNA Act, the DNA Detection of Sexual and Violent Offenders Act, became effective in 1995. Under that version,

[a] person who has been convicted or adjudicated delinquent for a felony sex offense or other specified offense before the effective date of this section and who is still serving a term of confinement *in connection therewith* on the effective date of this section shall not be released in any manner prior to the expiration of his maximum term of confinement unless and until a DNA sample has been withdrawn.

---

7. Apparently, Bingaman remained incarcerated from the time of his arrest because he was unable to post bail.

35 P.S. § 306(b) (emphasis added). The 1995 version only applied to those convicted or adjudicated delinquent for a felony sex offense or another specified offense which included murder, harassment and stalking, or indecent assault. The Court noted that the 1995 Act was repealed in 2002 and replaced by 42 Pa.C.S.A. §§ 4701–4741. The 2002 DNA Act expanded the list of offenses for which DNA testing is mandated to include burglary and robbery. *Id.* at 653. The General Assembly also amended the former section 306(b) to state:

> (1) A person who has been convicted or adjudicated delinquent for a felony sex offense or *other specified offense and who serves a term of confinement in connection therewith on or after the effective date* of this chapter [Chapter 47] shall not be released in any manner unless and until a DNA sample has been withdrawn.
>
> (2) This chapter shall apply to incarcerated persons convicted or adjudicated delinquent for a felony sex offense prior to the effective date of this chapter.

42 Pa.C.S. § 4716(b).

*Id.* at 654 (emphasis in original). The Court found that

> Section 4716(b) of the Judicial Code authorizes the taking of a DNA sample only when a person has been convicted of a specified offense and the person is confined *in connection with that offense* on or after December 16, 2002, the effective date of the amended statute. Thus, because Smith's sentence for burglary and robbery expired in 1998, the Department is not authorized to take a DNA sample from Smith. The Department is authorized to take a DNA sample from Smith only if the underlying offense for Smith's current sentence of

eleven to twenty-two years is a specified offense, something we do not know at this time.

*Id.* (emphasis added). Thus, the Department of Corrections' preliminary objections to Smith's petition to enjoin were overruled.

¶ 25 We find the rationale in *Smith* to be dispositive to the instant case. As in *Smith*, Bingaman was incarcerated and sentenced for the non-qualifying offenses of retail theft. He was no longer under supervision for his prior felony criminal trespass adjudication, but was only incarcerated because he was unable to post bail for the retail theft charges. The incarceration was not due to a conviction for a felony sex offense or other specified offense; therefore, the Act does not apply to him.

¶ 26 The trial court focused too narrowly on § 2316(b) which applies to conditions of release, probation or parole without giving due consideration to § 2316(a), the general rule and § 2316 *in toto*. When read as a whole, it is evident that the General Assembly did not tailor the Act to apply to those incarcerated for non-predicate offenses; otherwise, it would have simply stated so. Instead, the Act applies to those who stand before the court currently convicted or adjudicated delinquent for a felony sex offense or other specified offense or those serving a sentence for a felony sex offense or other specified offense. Since Bingaman was not incarcerated because of a felony sex offense or other specified offense, he did not fall within the purview of the DNA Act. As such, it was error for the court to order that he submit a DNA sample and to pay the mandatory $250 fee. Accordingly, we reverse and vacate that portion of his sentence, and the rest of the sentence remains intact.

¶ 27 Judgment of sentence reversed and vacated in part. Jurisdiction is relinquished.