**In the Interest of T.E.H., a Minor.**

**Appeal of T.E.H.**

**In the Interest of A.M., a Minor.**

**Appeal of A.M.**

**In the Interest of M.M.B., a Minor.**

**Appeal of M.M.B. a Minor, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 2006.
Filed June 28, 2007.

Jennifer L. LaBelle, York, for appellants.

Peter M. Vaughn, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: JOYCE, PANELLA and COLVILLE *, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellants, T.E.H., A.M., and M.M.B. (collectively, "the juveniles"), challenge the validity of the DNA Act, 44 PA. CONS.STAT. ANN. § 2316, in this consolidated appeal from the orders entered on January 12, 2006, by the Honorable John C. Uhler, Court of Common Pleas of York County. After careful review, we affirm with respect to T.E.H., and reverse with respect to A.M. and M.M.B.

¶ 2 T.E.H. was adjudicated delinquent on September 19, 2003, on charges of carrying an unlicensed firearm,[1] and possession of a firearm by a minor.[2] Subsequently, the trial court entered a disposition order placing T.E.H. on formal probation, from which T.E.H. was discharged on March 14, 2005. Thereafter, on October 18, 2005, T.E.H. was adjudi-

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 PA. CONS.STAT. ANN. § 6106(a)(1).

2. 18 PA. CONS.STAT. ANN. § 6110.1(a).

cated delinquent on charges of unauthorized use of a motor vehicle,[3] recklessly endangering another person,[4] fleeing and eluding,[5] and possession of a small amount of marijuana.[6] Pursuant to these adjudications, the trial court entered a disposition order placing T.E.H. in a residential treatment program. The trial court ordered DNA sampling pursuant to the DNA Act due to the September 19, 2003 felony adjudications.

¶ 3 A.M. was adjudicated delinquent on April 19, 2004, on charges of possession of a small amount of marijuana,[7] simple assault,[8] and retaliation against a witness.[9] Pursuant to these adjudications, the trial court entered a disposition order placing A.M. on formal probation, from which he was discharged on January 25, 2005.

¶ 4 Thereafter, on June 6, 2005, A.M. was adjudicated delinquent on charges of possession of drug paraphernalia,[10] operation of a motor vehicle without insurance,[11] and operation of an uninspected motor vehicle.[12] Pursuant to these adjudications, the trial court entered a disposition order placing A.M. on formal probation, as well as ordering DNA sampling pursuant to the DNA Act.

¶ 5 M.M.B. was adjudicated delinquent on April 29, 2003 on charges of carrying an unlicensed firearm,[13] and possession of a firearm by a minor.[14] Pursuant to these adjudications, the trial court entered a disposition order placing M.M.B. on formal probation, from which M.M.B. was discharged on August 23, 2004.

¶ 6 Thereafter, on March 18, 2005, M.M.B. was adjudicated delinquent on charges of false identification to law enforcement.[15] Pursuant to this adjudication, M.M.B. was placed on formal probation. Thereafter, on June 27, 2005, the trial court held a hearing on charges that M.M.B. had violated the conditions of his probation. At the conclusion of this hearing, the trial court ordered that M.M.B. submit to DNA sampling pursuant to the DNA Act.

¶ 7 All three juveniles filed timely motions to quash the DNA sampling. Subsequently, the trial court, on January 12, 2006, entered an order denying the motion to quash. Each juvenile filed a timely appeal. These appeals were consolidated, *sua sponte*, by this Court on March 13, 2006.

¶ 8 On appeal, the juveniles raise numerous issues which challenge the applicability and constitutionality of the DNA Act. Appellants' Brief, at 4.

¶ 9 The juveniles' first argument is that the trial court's application of the DNA Act retroactively appended a condition on dispositions that had already been fully served. In the cases of A.M. and M.M.B., each juvenile had been successfully discharged from their respective disposition of formal probation pursuant to felo-

---

3. 18 Pa Cons.Stat. Ann. § 3928.

4. 18 Pa. Cons.Stat. Ann. § 2705.

5. 75 Pa. Cons.Stat. Ann. § 3733(a).

6. 35 Pa Stat. § 780–113(a)(32).

7. 35 Pa Stat. § 780–113(a)(32).

8. 18 Pa. Cons.Stat. Ann. § 2701(a)

9. 18 Pa. Cons.Stat. Ann. § 4953.

10. 35 P.S. 780–113(a)(32).

11. 75 Pa. Cons.Stat. Ann. § 1786(f).

12. 75 Pa. Cons.Stat. Ann. § 4703.

13. 18 Pa. Cons.Stat. Ann. § 6106(a)(1).

14. 18 Pa. Cons.Stat. Ann. § 6110.1(a).

15. 18 Pa Cons.Stat. Ann. § 4914.

ny adjudications prior to January 31, 2005, the effective date of the most recent amendment of the DNA Act. In contrast, T.E.H. was still subject to the dispositional order entered pursuant to his felony adjudication on January 31, 2005. In each case, the trial court only ordered the DNA sampling pursuant to subsequent misdemeanor and summary offenses.

¶ 10 In their reply brief, the Appellants contend that our recent decision in *Commonwealth v. Bingaman*, 895 A.2d 622 (Pa.Super.2006), *appeal denied*, 588 Pa. 768, 905 A.2d 499 (2006), "clearly establishes that Appellants in the instant matter are not subject to the requirements of the DNA Act, and consequently, the trial court erred in directing them to submit DNA samples." Appellants' Reply Brief, at 3.

¶ 11 The Commonwealth, in its *sur* reply brief, concedes that M.M.B. is "probably not subject to the [DNA] Act" pursuant to this Court's intervening decisions in *Commonwealth v. Derk*, 895 A.2d 622 (Pa.Super.2006), *appeal denied*, 589 Pa. 718, 907 A.2d 1101 (2006), and its companion case, *Commonwealth v. Bingaman*. Appellee's Sur Reply Brief, at 4. However, the Commonwealth argues that, pursuant to *Derk*, the trial court's action in ordering T.E.H. to submit to DNA testing was proper. Finally, the Commonwealth argues that, while technically in violation of the holding in *Derk*, the trial court's action in ordering A.M. to submit to DNA testing should be affirmed on grounds of public policy.

¶ 12 In *Derk* and *Bingaman*, this Court was presented with consolidated appeals from sentences imposed pursuant to shoplifting convictions predicated on conduct prior to the effective date of the most recent amendments to the DNA Act. The first defendant, Derk, had pled guilty to a felony shoplifting charge on March 19, 2005, and had been immediately sentenced to five years probation. The second defen-

dant, Bingaman, had pled guilty to two misdemeanor shoplifting charges on January 6, 2005, and had been sentenced to a term of imprisonment of five days to twenty-three months. Bingaman, however, had a prior record of a felony conviction dating seven years from before the effective date of the new DNA Act, i.e., January 31, 2005. In each case, the trial court ordered the defendant to submit to DNA sampling pursuant to the DNA Act.

¶ 13 On appeal, both defendants argued that the trial court's action in ordering DNA sampling constituted an *ex post facto* violation. The *Derk* panel found that DNA sampling pursuant to the DNA Act was not punitive either in intent or in effect. *Derk*, 895 A.2d at 630. Since Derk had pled guilty to a felony and was therefore subject to the dictates of the DNA Act, the *Derk* panel affirmed her judgment of sentence. *Id.*

¶ 14 In contrast, the panel noted that Bingaman had pled guilty only to misdemeanor charges which are not predicate offenses under the DNA Act. *Id.*, at 631. Furthermore, Bingaman was not under supervision for his prior felony conviction at the time of the effective date of the DNA ACT, but had only been imprisoned because he was unable to post bail on the two current misdemeanor charges. *Id.*, at 632. In vacating Bingaman's judgment of sentence in part, the *Derk* panel noted that

the Act applies to those who stand before the court currently convicted or adjudicated delinquent for a felony sex offense or other specified offense or those serving a sentence for a felony sex offense or other specified offense. Since Bingaman was not incarcerated because of a felony sex offense or other specified offense, he did not fall within the purview of the DNA Act.

*Id.*

¶ 15 In the present case, we agree that the circumstances with respect to M.M.B.

are clearly analogous to defendant Bingaman in *Derk.* M.M.B. was no longer under supervision for his prior felony adjudication. The only reason M.M.B. was confined was his subsequent misdemeanor adjudications. Accordingly, M.M.B. did not fall under the purview of the DNA Act and the trial court was without authority to order M.M.B. to submit to DNA sampling. M.M.B.'s remaining two issues on appeal are accordingly moot.

¶ 16 At the other end of the spectrum, we agree with the Commonwealth that T.E.H. was properly ordered to submit to DNA sampling. T.E.H. remained under supervision for his felony firearm adjudications until March 14, 2005, one and one-half months after the effective date of the most recent amendments to the DNA Act. While it is true that T.E.H. was discharged from supervision without submitting a DNA sample, this does not change the fact that the DNA Act mandated that he submit a DNA sample prior to being discharged. While the application of the DNA Act to T.E.H. was clearly not timely from a supervision point of view, we discern no provision in the Act allowing for lapse of the requirement to submit a sample. In fact, it may fairly be argued that T.E.H. was **never** successfully discharged from supervision, as he had failed to comply with the mandatory terms of the DNA Act. Accordingly, we conclude that T.E.H. fell within the purview of the Act. We will address T.E.H.'s two remaining arguments on appeal *infra.*

¶ 17 In between the poles represented by M.M.B. and T.E.H. lie the circumstances of A.M. The Commonwealth contends that

> [i]f the definition of "other specified offense" had included all felonies, five days prior to the January 31, 2005, effective date, this appeal probably would not even be before this Court. A.M. should

not be excused from providing a DNA sample due to a five-day technicality.

Appellee's *sur* reply Brief, at 6. However, the Commonwealth cites no authority for its argument that we are free to disregard the effective date of legislation if we so desire. We conclude that this "technicality" is, in fact, jurisdictional in nature and is controlling on the decision of this case. A.M. was no longer subject to supervision pursuant to a felony adjudication as of January 31, 2005, the effective date of the most recent amendments to the DNA Act. Accordingly, pursuant to *Bingaman,* he did not fall under the purview of the Act, and was not properly ordered to submit to DNA sampling. This conclusion renders the remaining two issues raised by A.M. on appeal moot.

¶ 18 As we have concluded that T.E.H. was properly subjected to the requirements of the DNA Act, we must address the final two issues raised by Appellants on appeal, albeit only with respect to T.E.H. In their second argument, the Appellants argue that the DNA Act is void for vagueness. A penal statute is void for vagueness if "it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Commonwealth v. McCoy,* 895 A.2d 18, 30 (Pa.Super.2006) (citation omitted). The void for vagueness doctrine incorporates the due process concept of fair notice. *Grayned v. Rockford,* 408 U.S. 104, 108–109 n. 4, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

¶ 19 T.E.H. specifically argues that Section 2316(a) contradicts Section 2316(b)(1), thereby rendering the entire section void for vagueness. In essence, T.E.H. contends that while subsection (a) provides only for testing of those convicted or adjudicated delinquent of a predicate offense, subsection (b) provides for testing of any

incarcerated person who has ever committed a predicate offense, regardless of the reason for their current incarceration. We note, however, that this issue has been resolved by the construction of the statute in *Bingaman:*

When read as a whole, it is evident that the General Assembly did not tailor the Act to apply to those incarcerated for non-predicate offenses ... Instead, the Act applies to those who stand before the court for a felony sex offense or other specified offense or those serving a sentence for a felony sex offense or other specified offense.

895 A.2d at 632. Given this construction, the statute is undeniably clear, and T.E.H.'s argument to the contrary fails.

¶ 20 In his final argument, T.E.H. argues that the DNA Act violates his right to privacy as well as his right to be free from unreasonable searches. Specifically, T.E.H. first argues that juveniles have an increased interest in maintaining their privacy. In support, T.E.H. quotes this Court: "There is a compelling interest in protecting minor children's privacy rights and the protection of a minor child's privacy is a key aspect of the Juvenile Act." *In re M.B.*, 869 A.2d 542, 546 (Pa.Super.2005). T.E.H., however, misconstrues the context of that statement.

¶ 21 In *M.B.*, this Court recognized that the legislature intended to provide certain protections for children in the Juvenile Act. Based upon that recognition, we held that a trial court was empowered to restrict the dissemination of documents prepared pursuant to the mandates of the Juvenile Act. *M.B.* did not hold that the increased concerns for the privacy of children were constitutionally mandated; rather, the *M.B.* panel merely held that

the legislature had provided, through the Juvenile Act, such increased protections.

¶ 22 T.E.H. points to no other authority for the position that children have an increased expectation of privacy, and our independent research has revealed none. We therefore conclude that this argument is unavailing.

¶ 23 Lastly, T.E.H. contends that DNA testing reveals much more information about an individual than a simple blood test, and is therefore more of an intrusion into a person's privacy. However, we agree with the Commonwealth Court that the "slight intrusion occasioned by the withdrawal of blood is outweighed by the special public interest in maintaining an identification data bank." *Dial v. Vaughn*, 733 A.2d 1, 7 (Pa.Cmwlth.1999).[16] Accordingly, the DNA act does not violate either the federal or Pennsylvania prohibition on unreasonable searches and seizures. *Id.; Luckett v. Blaine*, 850 A.2d 811, 814 (Pa. Cmwlth.2004). T.E.H.'s final argument therefore offers him no relief, and we therefore affirm the order directing him to submit to DNA sampling.

¶ 24 In summary, we conclude that neither A.M. nor M.M.B. are subject to the dictates of the DNA Act, and therefore reverse the orders directing them to submit to DNA sampling. In contrast, we conclude that T.E.H. is subject to the provisions of the DNA Act. Furthermore, the DNA Act is not void due to vagueness, nor does it violate T.E.H.'s right to privacy or right to be free from unreasonable searches and seizures. Accordingly, we affirm the order directing T.E.H. to submit to DNA sampling.

¶ 25 In 325 MDA 2006, order affirmed, jurisdiction relinquished.

---

**16.** Of course, we are cognizant of the well-established proposition that the Superior Court is "not bound by any decision of the Commonwealth Court." *Connor v. Crozer Keystone Health System*, 832 A.2d 1112, 1116 n. 3 (Pa.Super.2003) (citation omitted).

¶ 26 In 326 MDA 2006, order reversed, jurisdiction relinquished.

¶ 27 In 327 MDA 2006, order reversed, jurisdiction relinquished.

¶ 28 Judge COLVILLE files a dissenting opinion.

### DISSENTING OPINION BY COLVILLE, J.:

¶ 1 I dissent.

¶ 2 In their motions to quash, their concise statements of matters complained of on appeal, and their chief appellate briefs, Appellants argued that the DNA Act is unconstitutional because it violates the separation of powers doctrine, because it is void for vagueness, and because it allows for unreasonable searches and seizures. In their reply brief, Appellants rely on *Commonwealth v. Derk*, 895 A.2d 622 (Pa.Super.2006), in arguing that they "are not subject to the requirements of the DNA Act...." Appellants' Reply Brief at 3. In my view, Appellants waived any issue regarding the applicability of the DNA Act to them because they failed to present such an issue in the trial court, *see* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."), because they failed to raise such an issue in their Pa.R.A.P. 1925(b) statements, *see Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."), and because they raised this issue for the first time in their reply brief, *see Commonwealth v. Wharton*, 571 Pa. 85, 811 A.2d 978, 990 (2002) ("[T]he claim is waived because it was raised for the first time in a reply brief.").

¶ 3 In their reply brief, Appellants brought their applicability issue under the following heading: "Whether the lower court erred in denying Appellants' motion to quash the DNA sample because ... 44 Pa.C.S.A. § 2316 violates the separation of powers doctrine?" Appellants' Reply Brief at 3. However, the argument Appellants present under this heading does not relate to a claim that the DNA Act violates the separation of powers doctrine. Instead, Appellants rely upon the disposition of the consolidated companion case in *Derk, Commonwealth v. Bingaman*, 895 A.2d 622 (Pa.Super.2006), in contending that the DNA Act does not apply to them. The Majority, in turn, addresses Appellants' first issue, *i.e.*, their separation of powers issue, by relying upon this Court's disposition of Bingaman's appeal.

¶ 4 However, in *Derk*, this Court did not determine that the trial court erred in requiring Bingaman to comply with the DNA Act because the Act violated the separation of powers doctrine. Rather, the Court merely interpreted the language employed by the legislature in crafting the DNA Act and concluded that the legislature did not intend for the DNA Act to apply to persons such as Bingaman.[17] The

---

17. The following excerpt from *Derk* demonstrates that this Court applied concepts of statutory construction, not constitutional interpretation, in determining that the trial court erred in requiring Bingaman to comply with the DNA Act:

> The trial court focused too narrowly on § 2316(b) which applies to conditions of release, probation or parole without giving due consideration to § 2316(a), the general rule and § 2316 *in toto*. When read as a

whole, it is evident that the General Assembly did not tailor the Act to apply to those incarcerated for non-predicate offenses; otherwise, it would have simply stated so. Instead, the Act applies to those who stand before the court currently convicted or adjudicated delinquent for a felony sex offense or other specified offense or those serving a sentence for a felony sex offense or other specified offense. Since Bingaman was not incarcerated because of a felony sex offense

meritorious argument relied upon by Bingaman simply was that "his misdemeanor retail theft convictions are not predicate offenses under the [DNA] Act." This argument was available to Appellants, but they did not raise it until they filed their reply brief. As such, the issue is waived, and consequently, I would not afford M.M.B. or A.M. the relief provided to them by the Majority.[18]

or other specified offense, he did not fall within the purview of the DNA Act. As such, it was error for the court to order that he submit a DNA sample and to pay the mandatory $250 fee. Accordingly, we reverse and vacate that portion of his sentence, and the rest of the sentence remains intact.

*Derk,* 895 A.2d at 632.

18. While I have styled this opinion as a dissent, I note that I have not ruled out the possibility that Appellants are due relief under the standards that govern their various constitutional issues.