PETITIONER F; Petitioner G; Petitioner H; Petitioner J; and Petitioner K, Appellants,

v.

Bridget Skaggs BROWN, Commissioner, Department of Juvenile Justice, in her Official Capacity, Appellee.

No. 2008–SC–000213–DG.

Supreme Court of Kentucky.

March 18, 2010.

---

Mary Gail Robinson, Assistant Public Advocate, Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellants.

Joslyn Olinger Glover, Justice and Public Safety Cabinet, Office of Legal Services, Department of Juvenile Justice, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

Appellants are juveniles adjudicated public offenders for various sex offenses.[1] They argue that the 2002 versions of Kentucky's DNA sampling statutes[2] do not require them to submit DNA for inclusion in a state and national database. Appel-

---

**1.** Petitioner I and Petitioner L, appellants in the Court of Appeals, were adjudicated public offenders for burglary offenses. They prevailed in the Court of Appeals on their claims that DNA sampling could not be applied to them. This Court granted a motion to dismiss them from this appeal.

**2.** Appellants challenge KRS 17.170 and 17.175 as amended in 2002, and KRS 17.171–17.174 as enacted in 2002. Unless otherwise noted, all references are to the 2002 versions of the statutes.

lants also present constitutional and administrative challenges to the statutes. Appellee is Commissioner of the Department of Juvenile Justice (DJJ), which implemented directives and policies to sample DNA from certain juveniles under its custody or control. For the reasons that follow, we reject Appellants' challenges, and affirm the judgment of the Court of Appeals.

## BACKGROUND

In 1992, the General Assembly passed an act[3] creating a "centralized database of DNA (deoxyribonucleic acid) identification records for convicted criminals, crime scene specimens, missing persons, and close biological relatives of missing persons[,]" which "shall be compatible with the procedures set forth in a national DNA identification index to ensure data exchange on a national level[.]" KRS 17.175(1). The purpose of this database is

> to assist federal, state, and local criminal justice and law enforcement agencies within and outside the Commonwealth in the identification, detection, or exclusion of individuals who are subjects of the investigation or prosecution of sex-related crimes, violent crimes, or other crimes and the identification and location of missing and unidentified persons.

KRS 17.175(2). KRS 17.175(1) and (2) remain largely unchanged since 1992.

As part of the same 1992 act,[4] the General Assembly also permitted the collection of DNA samples from those convicted of certain felonies, codified at KRS 17.170. As amended in 1996,[5] KRS 17.170(1) permitted the Department of Corrections to take a DNA sample from "[a]ny person convicted [after the effective date] of a felony offense under KRS Chapter 510 or KRS 530.020."

In 2001, the Court of Appeals in *J.D.K. v. Commonwealth* held that juveniles adjudicated public offenders did not fall within the purview of KRS 17.170, because an adjudicated juvenile has not been convicted of a felony offense. 54 S.W.3d 174, 176 (Ky.App.2001). The Court of Appeals noted that KRS 635.040 states that "[n]o adjudication by a juvenile session of district court shall be deemed a conviction...." *Id.* The court also noted that "the Unified Juvenile Code does not distinguish between or among felonies, misdemeanors, or violations for purposes of dispositions in juvenile court." *Id.*

In the next regular legislative session following *J.D.K.,* the General Assembly passed House Bill 4.[6] The bill made slight modifications to the language of KRS 17.170. In addition, the bill created several new statutes, which expanded the class of persons subject to DNA sampling. KRS 17.171 added those convicted of unlawful transaction with a minor in the first degree, use of a minor in a sexual performance, promoting a sexual performance by a minor, or a felony attempt to commit any of these offenses. KRS 17.172 added those convicted of first- or second-degree burglary or a felony attempt to commit either of these offenses. KRS 17.174 added certain juveniles adjudicated public offenders.[7]

---

3. 1992 Ky. Acts ch. 175, § 2.

4. 1992 Ky. Acts ch. 175, § 1.

5. 1996 Ky. Acts ch. 334, § 4.

6. 2002 Ky. Acts ch. 154.

7. KRS 17.173 added persons in custody for a capital offense, a Class A felony, or a Class B felony involving the death of the victim or serious physical injury to the victim. This provision was not made applicable to juvenile public offenders.

The provisions of House Bill 4, passed in 2002, are at issue in this case. Since 2002, the General Assembly has amended KRS 17.170 four times, and has repealed KRS 17.171–17.174.[8] Under the current law, KRS 17.170 requires DNA sampling of all persons convicted of felonies, as well as juveniles who (1) were 14 years or older at the time of their offense, and (2) have been adjudicated a public offender for a felony sex offense, incest, or being a juvenile sexual offender.

On December 20, 2005, Appellee, DJJ Commissioner Bridget Skaggs Brown, issued a General Directive establishing a procedure for the sampling of DNA from juvenile public offenders. However, Brown issued another Directive 8 days later, postponing DNA sampling for a minimum of 30 days.

On February 1, 2006, DJJ issued Policy DJJ 138, which provided procedures for DNA sampling of adjudicated public offenders "as mandated by KRS 17.170, 17.171, 17.172, 17.173, and 17.174." On February 3, 2006, Brown issued General Directive 06–02 (establishing procedures for "DNA sample collection as mandated by [KRS 17.170–17.174]"). However, due to Appellants' legal challenge, Brown delayed implementation of DNA sampling on February 16, 2006 with General Directive 06–05. General Directive 06–05 also included an amended list of qualifying of-

fenses for juvenile public offenders to mirror the offenses listed in KRS 17.170–17.172.[9]

Appellants filed a petition for a writ of prohibition and declaration of rights in Franklin Circuit Court on February 15, 2006. The circuit court ordered the case to be briefed in the same manner as an administrative appeal. Additionally, Appellee filed a motion for summary judgment. On October 26, 2006, the circuit court entered a 14–page Order granting judgment in favor of Appellee and DJJ. The Court of Appeals affirmed. This Court then granted discretionary review.

## ANALYSIS

Appellants present four issues for review: (I) whether DJJ erroneously applied the DNA sampling statutes to juvenile public offenders, (II) whether DNA sampling violates Appellants' federal and state constitutional rights, (III) whether DJJ violated KRS Chapter 13A by failing to issue administrative regulations concerning DNA sampling, and (IV) whether DJJ violated final action by the Justice Cabinet by issuing its own Directives and policies.

### I. DJJ Correctly Applied The DNA Sampling Statutes To Juvenile Public Offenders

Appellants argue that the Franklin Circuit Court and the Court of Appeals misconstrued the DNA sampling statutes.

8. 2006 Ky. Acts ch. 182, § 2 (amending KRS 17.170(1) to include "a youthful offender … detained in the custody of the Department of Juvenile Justice" and to state that DNA samples can be taken by the Department of Corrections or the Department of Juvenile Justice); 2007 Ky. Acts ch. 85, § 91 (adding "Kentucky" in front of words "State Police"); 2008 Ky. Acts ch. 158, § 10 (amending KRS 17.170 to require DNA sampling from any person convicted of a felony, as well as any juvenile 13 years of age or older at the time of being adjudicated a public offender for incest or offenses categorized as violent offenses);

and § 15 (repealing KRS 17.171 through 17.174, and KRS 17.177)

On February 25, 2009, the Franklin Circuit Court declared the 2008 bill void because it was unconstitutionally enacted. *Petitioner A v. Haws*, No. 08–CI–1088 (Franklin Cir. Ct. Feb. 25, 2009). The General Assembly then repealed, reenacted, and amended KRS 17.170 to its current version. 2009 Ky. Acts ch. 105, § 2.

9. Policy DJJ 138, General Directive 06–02, and General Directive 06–05 are hereinafter referred to collectively as "Directives."

The relevant 2002 statutes are listed below.[10] KRS 17.170(1):

Any person convicted on or after July 14, 1992, of a felony offense under KRS Chapter 510 [sex offenses] or KRS 530.020 [incest], shall, or who is in the custody of the Department of Corrections on July 14, 1992, under KRS Chapter 510 or KRS 530.020 may, have a sample of blood, an oral swab, or sample obtained through a noninvasive procedure taken by the Department of Corrections for DNA (deoxyribonucleic acid) law enforcement identification purposes and inclusion in law enforcement identification databases.

KRS 17.171:

Any person convicted on or after July 15, 2002, or who is in the custody of the Department of Corrections on or after July 15, 2002, for a violation of KRS 530.064 [unlawful transaction with a minor in the first degree], 531.310 [use of a minor in a sexual performance], or 531.320 [promoting a sexual performance by a minor] or a felony attempt to commit one (1) of these offenses shall be subject to the provisions of KRS 17.170 relating to the collection and retention of deoxyribonucleic acid (DNA) evidence.

KRS 17.172:

Any person convicted on or after July 15, 2002, or who is in the custody of the Department of Corrections on or after July 15, 2002, for a violation of KRS 511.020 [first-degree burglary] or 511.030 [second-degree burglary] or a felony attempt to commit one of these offenses shall be subject to the provisions of KRS 17.170 relating to the collection and retention of deoxyribonucleic acid (DNA) evidence.

KRS 17.174:

KRS 17.171 and 17.172 shall apply to a public offender adjudicated a public offender or in the custody of the Department of Juvenile Justice on or after July 15, 2002, for any offense defined in KRS 17.170 or 17.171 or an attempt to commit one (1) of the named offenses.

■ The Court of Appeals held that KRS 17.174 does not permit DNA sampling of juveniles adjudicated public offenders for offenses listed in KRS 17.172 (first- and second-degree burglary). KRS 17.174 contains the qualifying phrase "for any offense defined in KRS 17.170 or 17.171[.]" Therefore, offenses listed in KRS 17.172 are excluded. We accept and adopt this holding of the Court of Appeals, which Appellee has not challenged.

■ Appellee argues that KRS 17.174 requires DJJ to sample the DNA of all juveniles adjudicated public offenders or in its custody on or after July 15, 2002 for the offenses listed in KRS 17.170 and 17.171. Appellants argue that the statute only authorizes DNA sampling of adults in the custody of the Department of Corrections who, while not having been convicted of a qualifying offense, nevertheless have a qualifying juvenile adjudication.

■ We begin with general principles of statutory construction. In construing a statute, our goal is to give effect to the intent of the General Assembly. *Richardson v. Louisville/Jefferson County Metro Gov't*, 260 S.W.3d 777, 779 (Ky.2008) (citing *Osborne v. Commonwealth*, 185 S.W.3d 645, 648 (Ky.2006)). "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson*, 260 S.W.3d at 779 (citing *Osborne*, 185 S.W.3d at 648–49). We read the statute as a whole and in context with other parts of

10. Bracketed words within each statute are added here for clarity.

the law. *Richardson,* 260 S.W.3d at 779 (citing *Lewis v. Jackson Energy Co-op. Corp.,* 189 S.W.3d 87, 92 (Ky.2005)). In addition, an act is to be read as a whole, and any language in the act is to be read in light of the whole act. *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet,* 133 S.W.3d 456, 465 (Ky.2004). The construction and application of a statute is a question of law, which we review *de novo. Richardson,* 260 S.W.3d at 779 (citing *Osborne,* 185 S.W.3d at 648).

KRS 17.174 does not state that KRS 17.170 (the statute authorizing DNA sampling) applies to juveniles for certain offenses. Rather, it states that two statutes *expanding* DNA sampling apply to juveniles adjudicated for certain offenses. These two expanding statutes, KRS 17.171 and 17.172, cannot be read without referring back to KRS 17.170 (the authorizing statute). It is also worth noting that KRS 17.171–17.174 were all passed as part of the same bill (House Bill 4). Reading the language in light of the entire act, we believe the General Assembly intended to apply the provisions of KRS 17.170 and 17.171 to juvenile public offenders.

██ We must also presume that the legislature did not intend an absurd result. *Workforce Dev. Cabinet v. Gaines,* 276 S.W.3d 789, 793 (Ky.2008). It is more logical to presume that the General Assembly intended to expand the provisions of KRS 17.170 and 17.171 to juvenile public offenders. To construe the statute as Appellants suggest would mean that the Department of Corrections, upon obtaining custody of individuals for non-qualifying offenses, would be required to determine whether that person had a qualifying juvenile adjudication.

██ KRS 17.174, when read in context with other relevant statutes, is ambiguous. Where, as here, a statute is ambiguous, we must look to outside evidence of legislative intent. *AK Steel Corp. v. Commonwealth,* 87 S.W.3d 15, 19 (Ky.App.2002).

The General Assembly enacted House Bill 4 at the first regular legislative session following *J.D.K.,* in which the Court of Appeals held that KRS 17.170's plain language made it inapplicable to juvenile public offenders. 54 S.W.3d at 176. While the legislature could have more clearly stated that KRS 17.170 applies to juveniles (as it did in subsequent amendments to the statute) the enactment of House Bill 4 immediately following *J.D.K.* suggests an intent by the legislature to apply KRS 17.170 to juveniles. In addition, the legislature's subsequent amendment of KRS 17.170 to specifically include juvenile public offenders in DNA sampling, and to specifically authorize DJJ to conduct such testing, shows an intent to sample DNA from public offenders.

Appellants also argue that the DNA sampling statutes, as applied by DJJ, are inconsistent with the purpose and language of Kentucky's Unified Juvenile Code. We have explained:

> It has been a principle theory of juvenile law that an individual should not be stigmatized with a criminal record for acts committed during minority. By providing young people with treatment oriented facilities rather than simple punishment, antisocial behavior can be modified and the offenders will develop as law abiding citizens.

*Jefferson County Dep't for Human Serv. v. Carter,* 795 S.W.2d 59, 61 (Ky.1990). In addition, KRS 635.040 provides that "[n]o adjudication by a juvenile session of District Court shall be deemed a conviction, nor shall such adjudication operate to impose any of the civil disabilities ordinarily resulting from a criminal conviction, nor shall any child be found guilty or be

deemed a criminal by reason of such adjudication."

The General Assembly is presumed to be aware of the Juvenile Code and its purpose when it chose to enact House Bill 4. *Shewmaker v. Commonwealth*, 30 S.W.3d 807, 809 (Ky.App.2000) ("It is presumed that the Legislature was cognizant of preexisting statutes at the time it enacted a later statute on the same subject matter."). In addition, the sampling of a juvenile public offender's DNA for inclusion in a non-public database is not equivalent to being "stigmatized with a criminal record." Nor is it intended as punishment. We do not view DJJ's interpretation of the DNA sampling statutes as being inconsistent with the purpose or language of the Juvenile Code.[11]

Under principles of statutory construction, we hold that the 2002 version of KRS 17.170 applies to juvenile public offenders for offenses listed in KRS 17.170 and 17.171. This is, of course, limited by the date restrictions contained in KRS 17.174.

## II. DNA Sampling As Conducted By DJJ Does Not Violate Appellants' Federal Or State Constitutional Rights

Appellants argue that DNA sampling violates their right to be free from unreasonable searches and seizures under the Fourth Amendment and Section 10 of the Kentucky Constitution. They also argue that DNA sampling violates their right to privacy and their due process rights.

### A. Fourth Amendment

██ Appellants argue that DNA sampling violates their rights under the Fourth Amendment to the United States Constitution. The collection and analysis of biological samples constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617–18, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Farmer v. Commonwealth*, 169 S.W.3d 50, 52 (Ky.App.2005) (citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Therefore, the question is whether the search is reasonable. *Skinner*, 489 U.S. at 619, 109 S.Ct. 1402.

██ Ordinarily, for a search to be reasonable, it must be based on probable cause. *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In certain circumstances, reasonable suspicion is sufficient. *See United States v. Knights*, 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, suspicionless searches can be justified in limited circumstances, including where there is a reduced expectation of privacy, *see Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), and where the search is part of a program designed to serve "special needs, beyond the normal need for law enforcement." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000); *see, e.g., Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); *Skinner*, 489 U.S. 602, 109 S.Ct. 1402.

### 1. The Proper Test

This Court has not previously applied the Fourth Amendment to DNA sampling

---

11. By contrast, Appellants' interpretation of KRS 17.174 could be seen as inconsistent with the purpose of the Juvenile Code, because it would require the Department of Corrections to gain access to a person's confidential juvenile records after he or she had reached the age of majority.

of convicted persons or adjudicated juveniles; however, a number of federal and state courts have addressed this issue. Generally, courts have applied one of two approaches.[12] Some courts have evaluated the constitutionality of DNA sampling under the traditional Fourth Amendment totality-of-the-circumstances balancing test. This approach involves balancing the individual's privacy interest against the state's interest in creating and maintaining a DNA database. *See Knights,* 534 U.S. 112, 118, 122 S.Ct. 587 (2001); *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

Other courts have applied the "special needs" test. This test requires courts to first ask whether the search serves some need beyond the normal needs of law enforcement. *See Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). If such a need exists, then that need must then be balanced against the individual's privacy interest. *See Nicholas v. Goord,* 430 F.3d 652, 664 n. 22 (2d Cir.2005).

While some courts have continued to apply the less stringent traditional Fourth Amendment analysis to DNA sampling, several U.S. Supreme Court cases have called that approach into question. In *City of Indianapolis v. Edmond,* the Court evaluated the constitutionality of random police checkpoints established for the purpose of interdicting illegal drugs. 531 U.S. at 35–36, 121 S.Ct. 447. The Court held that "[b]ecause the primary purpose of the Indianapolis checkpoint program is ultimately indistinguishable from the general interest in crime control, the checkpoints violate the Fourth Amendment." *Id.* at 48, 121 S.Ct. 447.

In *Ferguson v. City of Charleston,* the Court held unconstitutional a hospital policy of testing pregnant women's urine for cocaine. 532 U.S. 67, 86, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001). The policy established a number of criteria, which would trigger drug testing. *Id.* at 71, 121 S.Ct. 1281. However, none of these criteria "provided either probable cause to believe that [the women] were using cocaine, or even the basis for a reasonable suspicion of such use." *Id.* at 76, 121 S.Ct. 1281. The *Ferguson* majority made a distinction between a program's "ultimate goal" and its "immediate objective," holding that "[w]hile the ultimate goal of the program may well have been to get the women in question into substance abuse treatment and off of drugs, the immediate objective of the searches was to generate evidence *for law enforcement purposes* in order to reach that goal." *Id.* at 82–83, 121 S.Ct. 1281 (emphasis in original).

*Edmond* and *Ferguson* applied the special needs test and noted that the searches in question (1) lacked individualized suspicion, and (2) were for the purpose of a general interest in crime control.[13] *Ferguson* further distinguished between the immediate objective and the ultimate goal of a search, with the immediate objective being relevant for determining whether the

---

**12.** *See* Robin Cheryl Miller, Annotation, *Validity, Construction, and Operation of State DNA Database Statutes,* 76 A.L.R.5th 239 § 14 (2000 & Supp.) (collecting cases applying the totality-of-the-circumstances balancing test); *id.* § 16 (collecting cases applying the special needs test).

**13.** "We are particularly reluctant to recognize exceptions to the general rule of individualized suspicion where governmental authorities primarily pursue their general crime control ends." *Edmond,* 531 U.S. at 43, 121 S.Ct. 447. "The Fourth Amendment's general prohibition against nonconsensual, warrantless, and suspicionless searches necessarily applies to [the challenged policy]." *Ferguson,* 532 U.S. at 86, 121 S.Ct. 1281.

search's purpose was a general interest in crime control. By contrast, in *Samson v. California*, the Court applied a traditional Fourth Amendment balancing test to uphold the suspicionless search of a parolee's home based on a parolee's reduced expectation of privacy. 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006).

We read *Edmond, Ferguson*, and *Samson* as requiring application of the more stringent special needs test to cases involving suspicionless searches, except in certain cases involving the diminished expectation of privacy that comes with a criminal conviction. *See Nicholas*, 430 F.3d at 663 (decided prior to *Samson*). In this case, we apply the special needs test, particularly in light of the fact that juvenile public offenders have not been convicted of a crime. KRS 635.040.

## 2. Application of the Special Needs Test

■ Applying the special needs test, we first ask whether the search serves some need beyond the normal needs of law enforcement. If such a need exists, then that need must then be balanced against Appellants' privacy interests.

### a. Special needs apart from ordinary law enforcement

■ Appellants argue that DNA sampling is for law enforcement purposes, and thus does not fall within the special needs exception. As Appellants note, KRS 17.170 states that DNA shall be taken for "law enforcement identification purposes and inclusion in law enforcement identification databases[,]" and DNA database information is to be used for "law enforcement purposes." KRS 17.175(4).

■ Under the special needs test, law enforcement objectives violate the Fourth Amendment when the primary purpose is "indistinguishable from the general inter-est in crime control...." *Edmond*, 531 U.S. at 48, 121 S.Ct. 447. However, "the phrase 'general interest in crime control' does not refer to every law enforcement' objective." *Illinois v. Lidster*, 540 U.S. 419, 424, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004). While the DNA database is maintained for law enforcement purposes, the primary purpose is not a general interest in crime control.

Instead, the primary purpose of the DNA database is "to assist ... law enforcement agencies ... in the identification, detection, or exclusion of individuals who are subjects of the investigation or prosecution of sex-related crimes, violent crimes, or other crimes and the identification and location of missing and unidentified persons." KRS 17.175(2). It is an investigative tool designed to provide law enforcement with additional information. Its purpose is not to detect unknown crimes, but rather to assist police in solving crimes where the perpetrator left DNA evidence. *See People v. Garvin*, 219 Ill.2d 104, 301 Ill.Dec. 423, 847 N.E.2d 82, 91 (2006).

In this respect, a DNA database differs significantly from the programs at issue in *Edmond* and *Ferguson*. In those cases, the programs were designed to obtain evidence of a crime. Unlike the urine samples in *Ferguson*, which contained evidence of the use of illegal drugs, a DNA sample is not by itself evidence of any crime. It merely provides identifying information that can be compared to physical evidence. *See Nicholas*, 430 F.3d at 669; *Garvin*, 301 Ill.Dec. 423, 847 N.E.2d at 91; *State v. Steele*, 155 Ohio App.3d 659, 802 N.E.2d 1127, 1136 (2003). As such, DJJ does not sample DNA "for the immediate and sole purpose of collecting incriminating evidence." *Williams v. Commonwealth*, 213 S.W.3d 671, 676 (Ky.2006). Kentucky's DNA sampling program therefore fulfills a

special need apart from ordinary law enforcement.

#### b. Balancing test

 Having determined that DNA sampling serves a special need beyond a general interest in crime control, we must now evaluate Appellants' privacy interests against the state's interest in creating and maintaining a DNA database. The state's interest is obvious. It has an interest in assisting law enforcement in investigating and solving crimes where DNA evidence is present. *See* KRS 17.175(5). It also has an interest in locating and identifying missing and unidentified persons. *Id.* These legitimate interests must be balanced against Appellants' privacy interests.

Generally, DNA sampling of convicted persons and adjudicated juveniles has been upheld as constitutional under the Fourth Amendment. Appellants argue that those cases dealing with adult offenders are inapplicable because juveniles are different from adult felons for purposes of balancing their privacy interests. Further, Appellants argue that those cases dealing with juvenile offenders[14] either failed to take into account the unique status of juveniles, or are of little value because of the "uniquely rehabilitative focus" of Kentucky's juvenile code.

Under the Kentucky Unified Juvenile Code, juvenile offenders are indeed treated differently than adult offenders. Juvenile offenders are not "convicted," and

they are not to be deemed criminals. KRS 635.040. Nor does a juvenile adjudication result in the civil disabilities that result from a criminal conviction. *Id.* The Juvenile Code also emphasizes rehabilitation to "assist in making the child a productive citizen by advancing the principles of personal responsibility, accountability, and reformation. . . ." KRS 600.010(2)(e). Juvenile hearings are not open to the public, KRS 610.070(3), and juvenile court records are confidential. KRS 610.340. Given these considerations, we recognize that an adjudicated public offender's privacy interest is not diminished to the same degree as a convicted adult. The question is whether these special considerations tip the scales in the Fourth Amendment analysis. *See In re Calvin S.*, 150 Cal.App.4th 443, 448, 58 Cal.Rptr.3d 559 (2007).

 "Juvenile offenders are not afforded all the constitutional rights that adult offenders receive. They are afforded only the right to fair treatment." *Carter*, 795 S.W.2d at 61. Appellants argue that, because this Court has always subordinated the due process rights of juvenile offenders to the rehabilitative mission of the juvenile code, then it follows that juvenile offenders may not have their DNA sampled unless they are granted the same due process rights as adult offenders. However, the adjudication of a juvenile as a public offender must still be supported by evidence beyond a reasonable doubt. KRS 610.080(2).

14. *See In re Leopoldo L.*, 209 Ariz. 249, 99 P.3d 578 (Ariz.Ct.App.2004); *In re Appeal in Maricopa County Juvenile Action Numbers JV–512600 and JV–512797*, 187 Ariz. 419, 930 P.2d 496 (Ariz.Ct.App.1996); *In re Calvin S.*, 150 Cal.App.4th 443, 58 Cal.Rptr.3d 559 (2007); *L.S. v. State*, 805 So.2d 1004 (Fla. Dist.Ct.App.2001); *In re Lakisha M.*, 227 Ill.2d 259, 317 Ill.Dec. 690, 882 N.E.2d 570 (2008); *In re T.C.*, 384 Ill.App.3d 870, 323 Ill.Dec. 850, 894 N.E.2d 876 (2008); *A.A. ex rel. B.A. v. Attorney General*, 189 N.J. 128, 914 A.2d 260 (2007); *In re Nicholson*, 132 Ohio App.3d 303, 724 N.E.2d 1217 (1999); *State ex rel. Juvenile Dep't of Multnomah County v. Orozco*, 129 Or.App. 148, 878 P.2d 432 (1994); *In re T.E.H.*, 928 A.2d 318 (Pa.Super.Ct.2007); *In re D.L.C.*, 124 S.W.3d 354 (Tex.App.2003).

In addition, DNA sampling does not significantly undermine a juvenile offender's interest in the confidentiality of his or her records. The 2002 version of KRS 17.175 mandates DNA records be used for "law enforcement purposes," KRS 17.175(4), and punishes misuse of the database as a Class A misdemeanor. KRS 17.175(7).[15] Thus, because access to the database is carefully circumscribed, requiring public offenders to submit to DNA sampling "is hardly a public announcement" of the public offender's adjudication. *Calvin S.*, 150 Cal.App.4th at 449, 58 Cal.Rptr.3d 559.

Nor does collecting a DNA sample contravene the purposes of the juvenile code. The General Assembly has identified reducing recidivism and providing treatment while maintaining public safety as goals of the juvenile code. KRS 600.010(2)(e). The goal of reducing recidivism is served by the deterrent effect of having a juvenile offender's DNA sample stored in a database. Therefore, the ultimate goal of rehabilitation is served through DNA sampling's deterrent effect. *See In re Lakisha M.*, 227 Ill.2d 259, 317 Ill.Dec. 690, 882 N.E.2d 570, 579 (2008). Further, the juvenile's interest does not outweigh the goal of maintaining public safety. *Id.* at 579–80.

Appellants also argue that the "uniquely rehabilitative focus" of Kentucky's juvenile code distinguishes it from other states where DNA sampling of juveniles has been upheld. In *In re Lakisha M.*, the Illinois Supreme Court considered a similar argument in the context of the search and seizure provision of the Illinois Constitution. The juvenile noted that Illinois, as home to the nation's first juvenile court, had "unique history and values when it comes to the treatment of juvenile offend-

ers. . . ." *Id.* at 581. The Court concluded that "collection and storage of DNA pursuant to our indexing statute has a deterrent and rehabilitative effect that actually advances the goals" of the juvenile code. *Id.* For the reasons stated above, we believe this statement applies to Kentucky's juvenile code as well.

In short, the privacy interests of juveniles adjudicated public offenders, while greater than those of convicted adults, still do not outweigh the state's and DJJ's legitimate interests in establishing and maintaining a DNA database. Appellants' Fourth Amendment challenge must fail.

**B. Right to Privacy, Due Process, and State Constitutional Rights**

Appellants argue that DNA sampling violates their rights under Section 10 of the Kentucky Constitution (the state counterpart to the Fourth Amendment). In this particular case, we see no reason to interpret Section 10 differently from the Fourth Amendment. *See LaFollette v. Commonwealth,* 915 S.W.2d 747, 748 (Ky. 1996). *But see Rainey v. Commonwealth,* 197 S.W.3d 89, 95–97 (Ky.2006) (Roach, J., concurring).

Appellants also argue that DNA sampling violates their privacy and due process rights under the Fourteenth Amendment to the United States Constitution and Sections 1, 2, and 11 of the Kentucky Constitution. The Kentucky Constitution has been held to "offer greater protection of the right of privacy than provided by the Federal Constitution as interpreted by the United States Supreme Court. . . ." *Commonwealth v. Wasson,* 842 S.W.2d 487, 491 (1992). However, this Court has never extended this greater privacy protection to searches and seizures, and Ap-

---

**15.** The current version or KRS 17.175 specifically mandates that the database information be kept confidential, KRS 17.175(4), and pun-

ishes misuse as a Class D felony. KRS 17.175(8).

pellants' privacy and due process claims have been adequately addressed by our discussion of the balancing of their privacy interests under the Fourth Amendment. *See Colbert v. Commonwealth,* 43 S.W.3d 777, 780 (Ky.2001).

### III. DJJ Did Not Violate KRS Chapter 13A By Issuing Directives And Policies In Lieu Of Administrative Regulations

 Appellants argue that, by issuing internal Directives, but not issuing administrative regulations, DJJ violated administrative procedures prescribed by KRS Chapter 13A. KRS 13A.100 provides that

> Subject to limitations in applicable statutes, *any administrative body which is empowered to promulgate administrative regulations* shall, by administrative regulation prescribe, consistent with applicable statutes:
> (1) Each statement of general applicability, policy, procedure, memorandum, or other form of action that implements; interprets; prescribes law or policy; describes the organization, procedure, or practice requirements of any administrative body; or affects private rights or procedures available to the public . . . .

(emphasis added).

In addition, "[a]n administrative body may promulgate administrative regulations to implement a statute *only when the act of the General Assembly creating or amending the statute specifically authorizes the promulgation of administrative regulations* or administrative regulations are required by federal law. . . ." KRS 13A.120(1)(a) (emphasis added). Further, an administrative body may not promulgate a regulation "[w]hen the administra-

tive body is not authorized by statute to regulate that particular matter. . . ." KRS 13A.120(2)(d).

The 2002 version of KRS 17.175 authorized only the Department of State Police forensic laboratory to issue administrative regulations. KRS 17.175(6).[16] DJJ was put in a situation where juveniles under its custody or control were required to submit DNA samples, but no statute authorized DJJ to issue administrative regulations governing that DNA sampling.

If the General Assembly had authorized DJJ by statute to issue administrative regulations regarding DNA sampling, then such regulations would likely have been required. *See Bowling v.Kentucky Dep't of Corrections,* 301 S.W.3d 478, 486–88 (Ky.2009). But because DJJ was not authorized to issue administrative regulations on this particular issue, its internal Directives and policy were sufficient.

### IV. DJJ Did Not Violate Final Action By The Justice Cabinet By Issuing Directives And Policies Instituting DNA Sampling

In 2002, KRS 17.177(3) stated that KRS 17.171–17.175 were to be implemented in numerical order as funding became available, and that "[a]s a section is implemented, the Reviser of Statutes shall be notified by the secretary of justice, in writing, as to the date of implementation" On April 15, 2003, the Secretary of the Justice Cabinet sent a Memorandum to the Reviser of Statutes, stating: "Please be notified that the Department of Corrections and the Department of State Police have completed their preparations for implementation of the Act and that the applicable sections of the Act . . . be effective May 1, 2003."

---

**16.** The current version of the statute authorizes the Justice Cabinet to issue administrative regulations. KRS 17.175(6).

Appellants argue that this Memorandum prevented DJJ from issuing Directives in February 2006 regarding DNA sampling of juvenile public offenders. We agree with the Court of Appeals that nothing in the statutory scheme prevented further action by DJJ after the Secretary's Memorandum was issued. The February 2006 Directives were permissible.

## CONCLUSION

Former KRS 17.170–17.174 permit DNA sampling for juveniles adjudicated public offenders for offenses listed in KRS 17.170 and 17.171 (subject to the date restrictions of KRS 17.174). In addition, DNA sampling does not violate Appellants' constitutional rights. Finally, DJJ's Directives were permissible under KRS Chapter 13A and KRS 17.177. The judgment of the Court of Appeals is affirmed.

All sitting. All concur.