SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MARIO W., | ) Arizona Supreme Court |
| | ) No. CV-11-0344-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) Nos. 1 CA-SA 11-0016 |
| THE HONORABLE THOMAS KAIPIO, | ) 1 CA-SA 11-0020 |
| COMMISSIONER OF THE SUPERIOR | ) 1 CA-SA 11-0025 |
| COURT OF THE STATE OF ARIZONA, | ) 1 CA-SA 11-0031 |
| in and for the County of | ) 1 CA-SA 11-0032 |
| Maricopa, | ) 1 CA-SA 11-0042 |
| | ) 1 CA-SA 11-0043 |
| Respondent Commissioner, | ) (Consolidated) |
| | ) |
| | ) Maricopa County |
| STATE OF ARIZONA, | ) Superior Court |
| | ) Nos. JV-181946 |
| Real Party in Interest. | ) JV-181821 |
| _____ | ) JV-555266 |
| BRADLEY W., | ) JV-555329 |
| | ) JV-555361 |
| Petitioner, | ) JV-555390 |
| | ) JV-555429 |
| v. | ) |
| | ) |
| THE HONORABLE THOMAS KAIPIO, | ) |
| COMMISSIONER OF THE SUPERIOR | ) **O P I N I O N** |
| COURT OF THE STATE OF ARIZONA, | ) |
| in and for the County of | ) |
| Maricopa, | ) |
| | ) |
| Respondent Commissioner, | ) |
| | ) |
| STATE OF ARIZONA, | ) |
| | ) |
| Real Party in Interest. | ) |
| _____ | ) |
| ALEXIS A., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| THE HONORABLE MARK BRAIN, | ) |

COMMISSIONER OF THE SUPERIOR          )
COURT OF THE STATE OF ARIZONA,        )
in and for the County of              )
Maricopa,                             )
                                      )
          Respondent Commissioner,    )
                                      )
THE STATE OF ARIZONA,                 )
                                      )
          Real Party in Interest.     )
_____)
NOBLE B.,                             )
                                      )
                     Petitioner,      )
                                      )
               v.                     )
                                      )
THE HONORABLE THOMAS KAIPIO,          )
JUDGE OF THE SUPERIOR COURT OF        )
THE STATE OF ARIZONA, in and for      )
the County of Maricopa,               )
                                      )
               Respondent Judge,      )
                                      )
STATE OF ARIZONA,                     )
                                      )
          Real Party in Interest.     )
_____)
BAILEY J.,                            )
                                      )
                     Petitioner,      )
                                      )
               v.                     )
                                      )
THE HONORABLE MARK F. ACETO,          )
JUDGE OF THE SUPERIOR COURT OF        )
THE STATE OF ARIZONA, in and for      )
the County of Maricopa,               )
                                      )
               Respondent Judge,      )
                                      )
STATE OF ARIZONA,                     )
                                      )
          Real Party in Interest.     )
_____)
DEVON C.,                             )
                                      )

                    Petitioner, )
                                )
             v.                 )
                                )
THE HONORABLE PETER A. THOMPSON, )
COMMISSIONER OF THE SUPERIOR     )
COURT OF THE STATE OF ARIZONA,   )
in and for the County of         )
Maricopa,                        )
                                )
        Respondent Commissioner, )
                                )
STATE OF ARIZONA,               )
                                )
        Real Party in Interest. )
_____)
ERIC R.,                        )
                                )
                    Petitioner, )
                                )
             v.                 )
                                )
THE HONORABLE THOMAS KAIPIO,     )
COMMISSIONER OF THE SUPERIOR     )
COURT OF THE STATE OF ARIZONA,   )
in and for the County of         )
Maricopa,                        )
                                )
        Respondent Commissioner, )
                                )
STATE OF ARIZONA,               )
                                )
        Real Party In Interest, )
_____)


Special Action from the Superior Court in Maricopa County
The Honorable Thomas A. Kaipio, Judge Pro Tem

**AFFIRMED**
_____


Opinion of the Court of Appeals, Division One
228 Ariz. 207, 265 P.3d 389 (App. 2011)

**VACATED**
_____


3

CHRISTINA PHILLIS, MARICOPA COUNTY PUBLIC ADVOCATE          Mesa
      By    David Katz, Deputy Public Advocate
            Aaron Jason Max, Deputy Public Advocate
            Colleen Engineer, Deputy Public Advocate
            Devra N. Ellexson, Deputy Public Advocate
            Suzanne Sanchez, Deputy Public Advocate
            Andrew Meissen, Deputy Public Advocate
Attorneys for Mario W., Bradley W., Alexis A.
Bailey J., Devon C., Eric R., and Noble B.

WILLIAM G. MONTGOMERY, MARICOPA COUNTY ATTORNEY          Phoenix
      By    Linda Van Brakel, Deputy County Attorney
Attorneys for State of Arizona

ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE          Chandler
      By    David J. Euchner
            Julie M. Levitt-Guren
Attorneys for Amicus Curiae Arizona Attorneys for Criminal
Justice

_____

**H U R W I T Z**, Vice Chief Justice

¶1      Arizona law requires juveniles charged with certain offenses and summoned to appear at an advisory hearing to submit to the investigating law enforcement agency "a sufficient sample of buccal cells or other bodily substances for deoxyribonucleic acid [DNA] testing and extraction." A.R.S. § 8-238(A). The penalty for failure to comply is revocation of release pending adjudication. § 8-238(B). In this case we consider whether the statutory scheme violates the Fourth Amendment prohibition against unreasonable searches and seizures.

**I.**

¶2      Seven juveniles (collectively, the "Juveniles") were separately charged with violations of offenses specified in § 8-

4

238(A). Each was summoned to an advisory hearing, released, and ordered to submit a buccal sample to law enforcement within five days. In each case, the superior court rejected Fourth Amendment objections to the sampling order.

¶3 The Juveniles then jointly filed a special action in the court of appeals. That court accepted jurisdiction and a divided panel held that requiring the submission of DNA samples from five juveniles for whom a probable cause determination has been made does not violate the Fourth Amendment. *Mario W. v. Kaipio*, 228 Ariz. 207, 210 ¶ 1, 265 P.3d 389, 392 (App. 2011). The majority reasoned that a judicial finding of probable cause is a "watershed event" that reduced these juveniles' expectations of privacy, *id.* at 214-15 ¶ 22, 265 P.3d at 396-97, and that the State's "interest in identifying these juveniles outweighs their right to privacy," *id.* at 217 ¶ 30, 265 P.3d at 399.[1] A different 2-1 majority, however, held that the Fourth Amendment forbids the DNA sampling of the two juveniles for whom no probable cause determination has yet been made. *Id.* at 210 ¶ 2, 265 P.3d at 392.[2]

_____

[1] The dissenting judge argued that DNA sampling is a suspicionless search barred by the Fourth Amendment. *Id.* at 222 ¶ 57, 265 P.3d at 404 (Norris, J., dissenting in part, but concurring in the result as to the two juveniles).

[2] The dissenting judge argued that there was no need to reach the constitutional question because, in her view, § 8-238 does not compel submission of a sample before a probable cause

5

¶4      The State and two of the Juveniles petitioned for review. We granted both petitions to address a recurring legal issue of statewide importance. We exercise jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

¶5      After a buccal sample is obtained under A.R.S. § 8-238(A), the investigating law enforcement agency transmits it to the Department of Public Safety ("DPS"), where it is analyzed and a DNA profile produced. §§ 8-238(C), 8-238(D), 13-610(H)(1), (2). The profile is entered into an Arizona DNA identification system, *see* § 41-2418 (establishing state system), and a national database, the Combined DNA Index System (CODIS), *see* 42 U.S.C. § 14132(a) (establishing national database). *See generally Haskell v. Harris*, 669 F.3d 1049, 1051-52 (9th Cir. 2012) (discussing interface of California database and CODIS). The sample and profile may then be used, *inter alia*, "[f]or law enforcement identification purposes." A.R.S. § 13-610(I)(1).[3]      A juvenile not ultimately found

---

determination. *Id.* at 219-20 ¶¶ 39-43, 265 P.3d at 401-02 (Orozco, J., concurring in part and dissenting in part).

[3]      Other provisions of Arizona law not at issue today require DNA profiling of various non-juveniles, including convicted felons, those arrested for certain crimes, probationers, and parolees. *See* A.R.S. § 13-610(A)-(D), (K), (L).

6

delinquent "may petition the superior court" to expunge the profile and sample from the Arizona system.  A.R.S. § 13-610(M); *see also* 42 U.S.C. § 14132(d)(2) (providing for expungement from CODIS); A.R.S. § 13-610(J) (providing for expungement when an adjudication is overturned on appeal or in a postconviction relief proceeding).

### III.

### A.

¶6      Before addressing the constitutional claims raised by the Juveniles, it is appropriate to begin by noting what is *not* at issue in this case.

¶7      First, the parties agree that DNA sampling involves a search or seizure governed by the Fourth Amendment.

¶8      Second, it is common ground that none of the Juveniles had been adjudicated delinquent for the charged crimes when ordered to submit a buccal cell sample.  If such an adjudication is made, a statute not at issue today, A.R.S. § 13-610(O)(2), governs DNA sampling and profiling.  Neither the State nor the Juveniles contest that post-adjudication sampling and profiling are constitutional.  *See In re Leopoldo L.*, 209 Ariz. 249, 250 ¶ 1, 99 P.3d 578, 579 (App. 2004) (finding post-adjudication sampling and profiling constitutional); *accord In re Lakisha M.*, 882 N.E.2d 570, 582 (Ill. 2008); *Petitioner F v. Brown*, 306 S.W.3d 80, 93 (Ky. 2010); *see also Wilson v. Collins*, 517 F.3d

7

421, 423 (6th Cir. 2008) (upholding DNA profiling of convicted felons); *United States v. Amerson*, 483 F.3d 73, 89 (2d Cir. 2007) (upholding DNA profiling of probationers); *United States v. Kincade*, 379 F.3d 813, 839 (9th Cir. 2004) (upholding DNA profiling of conditional releasees).

¶9        Third, the State does not claim probable cause that a DNA profile will provide evidence that any of these juveniles committed the charged offenses.  Nor does the State even reasonably suspect that a juvenile committed another offense for which the DNA profile might provide investigative assistance. *Cf. Hayes v. Florida*, 470 U.S. 811, 817 (1985) ("[T]he Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch."); A.R.S. § 13-3905 (permitting temporary detention for investigative fingerprinting upon judicial order).

¶10       Fourth, although § 13-610(I)(1) permits use of the DNA samples and resulting profiles for "law enforcement identification purposes," the State does not seek a profile simply to *identify* any juvenile in the normally accepted use of that term.  Put differently, the State does not claim that it

8

needs a DNA profile in any of the cases before us to determine who the charged juvenile is. Rather, the State argues that the statutory phrase includes not only authentication of a juvenile's identity, but also use of the profile to investigate whether the juvenile has committed other uncharged crimes. Indeed, given that the DNA profiles are placed both in Arizona and national databases, and are available to law enforcement officers throughout the country for investigative purposes, it is plain that the legislature intended the profile to be used for purposes other than simply confirming the name of the person charged with the current crime.[4]

¶11     Finally, the Juveniles do not contest the efficacy of the DNA database systems – both state and national – in solving crimes and providing unique identification information about an individual. But neither does the State claim – nor does any case suggest - that these law enforcement goals would justify DNA sampling and profiling of ordinary citizens. *See Haskell*, 669 F.3d at 1058 (majority opinion) (assuming

---

[4]     "The CODIS system enables federal, state, and local crime labs to exchange and compare DNA profiles electronically, thereby linking crimes to each other and to convicted offenders." Tracey Maclin, *Is Obtaining an Arrestee's DNA A Valid Special Needs Search Under the Fourth Amendment? What Should (and Will) the Supreme Court Do?*, 34 J.L. Med. & Ethics 165, 166 (2006) (internal quotation marks omitted). CODIS is currently linked "to all fifty states as a national index linking databases at the local, state and national levels." *Id.*

unconstitutionality of such a procedure); *id.* at 1061 (noting that the majority and the dissent agreed on the unconstitutionality of such a procedure).

**B.**

¶12    We turn then to the issue at hand: May the State, consistent with the Fourth Amendment, compel these Juveniles to submit to DNA extraction and profiling as a condition of release?

¶13    The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It has been long established that warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Supreme Court jurisprudence also long taught that even searches excepted from the warrant requirement could be conducted only on probable cause. *See Dunaway v. New York*, 442 U.S. 200, 208 (1979) (discussing case law). In 1968, however, the Court held that the Fourth Amendment allowed temporary seizures based on

10

something less than probable cause – reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 25-31 (1968).

¶14    The Court has also upheld searches in certain circumstances absent any showing of probable cause or reasonable suspicion.   In *Samson v. California*, the Court held that a search mandated as a condition of parole does not violate the Fourth Amendment.   547 U.S. 843, 847 (2006).   Although the Court might have premised *Samson* on a consent theory, it instead employed a "totality of the circumstances test" in finding the search reasonable.   *Id.* at 848-53.   Under that test, "[w]hether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and on the other, the degree to which it is needed for the promotion of legitimate governmental interests."   *Id.* at 848 (citation and internal quotation marks omitted).   The Court had earlier employed a totality of the circumstances analysis to uphold the suspicionless search of a probationer.   *United States v. Knights*, 534 U.S. 112, 118 (2001).   This Term, the Court upheld strip searches of jail detainees without any showing of probable cause or reasonable suspicion.   *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1518-23 (2012).   Although not explicitly employing a totality of the circumstances test, *Florence* also balanced the government's interests in safety and

11

orderly jail administration against the reduced privacy interests of detainees. *Id.*

¶15 No Arizona or United States Supreme Court case, however, addresses the constitutionality of suspicionless pre-conviction DNA testing. The case law elsewhere is sharply divided. Maryland's highest court recently found that DNA profiling of arrestees violated the Fourth Amendment. *King v. State*, 42 A.3d 549, 580 (Md. 2012). Other courts have also so held, distinguishing the post-conviction cases because arrestees have a higher expectation of privacy than convicted felons. *See, e.g., Friedman v. Boucher*, 580 F.3d 847, 858 (9th Cir. 2009); *In re Welfare of C.T.L.*, 722 N.W.2d 484, 492 (Minn. Ct. App. 2006).

¶16 Several other courts, however, have found DNA profiling of arrestees reasonable under the Fourth Amendment. *See, e.g., Haskell*, 669 F.3d at 1065 (2-1 decision); *United States v. Mitchell*, 652 F.3d 387, 416 (3d Cir. 2011) (en banc) (8-6 decision); *United States v. Pool*, 621 F.3d 1213, 1226 (9th Cir. 2010), *reh'g en banc granted*, 646 F.3d 659 (9th Cir.), *and vacated*, 659 F.3d 761 (9th Cir. 2011); *Anderson v. Commonwealth*, 650 S.E.2d 702, 705-06 (Va. 2007). These courts have found that the government's interests in identifying arrestees and solving crimes outweigh an arrestee's diminished expectations of privacy.

12

¶17     Most courts considering the constitutionality of DNA sampling and profiling have employed the totality of the circumstances test.  *See Mitchell*, 652 F.3d at 403 ("We and the majority of circuits — the First, Fourth, Fifth, Sixth, Eighth, Ninth, Eleventh, and District of Columbia — have endorsed a totality of the circumstances approach.").  *But see Amerson*, 483 F.3d at 78 (applying "special needs test"); *Green v. Berge*, 354 F.3d 675, 677-78 (7th Cir. 2004) (same).  The parties do not dispute the applicability of the totality of the circumstances test, and we therefore analyze the Arizona scheme under that rubric.

## c.

¶18     We begin by recognizing that the Arizona statutory scheme involves two separate intrusions on a juvenile's privacy. First, the State physically seizes a buccal cell sample from the juvenile.  Second, it processes the seized cells and extracts a DNA profile.  *See State v. Gomez*, 226 Ariz. 165, 166 n.1 ¶ 3, 244 P.3d 1163, 1164 n.1 (2010) (describing process of sampling); 1 Kenneth S. Broun et al., McCormick on Evid. § 205 (6th ed. 2010) (describing process of extracting profiles from DNA samples).    In *Mitchell*, the Third Circuit found that DNA sampling and profiling involved two searches — "the physical collection of the DNA sample" and the "processing of the DNA sample."   652 F.3d at 406-07.   Other courts have reached the

13

same conclusion.  *See Amerson*, 483 F.3d at 84-85; *State v. Martin*, 955 A.2d 1144, 1153-54 (Vt. 2008).

¶19     This approach is consistent with precedent outside the DNA context.  In *United States v. Chadwick*, for example, the Supreme Court analyzed separately the legality of the seizure of a steamer trunk and the later opening of the trunk, holding the initial seizure reasonable but finding the later search unconstitutional.  433 U.S. 1, 13 & n.8 (1977).[5]  Similarly, our court of appeals has held that even if an officer may be justified under the circumstances in seizing a purse during a *Terry* stop, the same justification does not automatically allow the search of the purse.  *In re Tiffany O.*, 217 Ariz. 370, 375 ¶ 20, 174 P.3d 282, 287 (App. 2007); *see also United States v. Doe*, 61 F.3d 107, 110-11 (1st Cir. 1995) (analyzing separately the constitutionality of the seizure of a closed container and subsequent opening of the container).

¶20     These cases recognize that even when law enforcement exigencies justify an initial limited intrusion on Fourth Amendment protected interests, a greater showing is required for a second more extensive intrusion.  The two-tiered approach is particularly appropriate in the DNA sampling and profiling context because the two searches implicate different privacy

---

[5]     *Chadwick* was later overruled with respect to its interpretation of the "automobile exception" to the Fourth Amendment in *California v. Acevedo*, 500 U.S. 565 (1991).

interests. The seizure of buccal cells is a physical intrusion, but does not reveal by itself intimate personal information about the individual. The later search of the sample, however, reveals uniquely identifying information about individual genetics. *See Haskell*, 669 F.3d at 1051 (describing identifying characteristics of DNA profile). That second search is, in effect, the analog to opening the steamer trunk in *Chadwick* and the purse in *Tiffany O.* to see what is inside.

**1.**

¶21    We thus turn first to the seizure of buccal cells. It is clear that one arrested on probable cause may be compelled to give fingerprints to law enforcement. *See Davis v. Mississippi*, 394 U.S. 721, 725-28 (1969). Several courts have characterized a buccal swab as a similarly minimal intrusion into an arrestee's privacy. *See, e.g.*, *Haskell*, 669 F.3d at 1050; *Mitchell*, 652 F.3d at 407; *Martin*, 955 A.2d at 1153-54.

¶22    We agree. While taking fingerprints, law enforcement officers will often touch the body of an arrestee or restrain him from departing until the process is completed. *See* A.R.S. § 13-3890 (providing for court order when arrestee refuses to submit to fingerprinting). The arrestee is required to press his hands on both an ink pad and the fingerprint card. *See* A.A.C. § R13-1-106 (providing for use of ink and roll fingerprint cards). The intrusion on an arrestee's privacy

15

interests in the swiping of a swab to obtain buccal cells is not significantly greater than fingerprinting. Indeed, in some instances arrestees apparently take their own buccal swabs. *See Haskell*, 669 F.3d at 1057.

¶23 But even if extracting the cell sample does not intrude on privacy to the same extent as a search of a home or the drawing of blood, it nonetheless remains a search or seizure under the Fourth Amendment. *See, e.g.*, *Mitchell*, 652 F.3d at 406. Under the totality of the circumstances test, the issue is whether, and to what degree, that intrusion serves important governmental interests. *Samson*, 547 U.S. at 848.

¶24 The State offers various justifications for the extraction of a DNA sample. We find one compelling. If, as here, a juvenile is released pending adjudication and later fails to appear for trial without previously having submitted a buccal sample, the opportunity to obtain a DNA profile for identification purposes will have been lost. The State has an important interest in locating an absconding juvenile and, perhaps years after charges were filed, ascertaining that the person located is the one previously charged. If the State cannot obtain a DNA sample from a juvenile before release, it may never have another opportunity to do so.

¶25 This exigency justifies obtaining a buccal cell sample even if a formal judicial determination of probable cause was

16

not made at the advisory hearing.  Although two of the Juveniles were ordered to submit samples before a probable cause determination was made, each had been charged with a serious crime in a petition filed under oath by the prosecutor.  *See* Ariz. R.P. Juv. Ct. 24(a).  One arrested for a serious crime may be fingerprinted before a judicial determination of probable cause.  *See* A.R.S. § 13-3890(A).[6]  A judicial order to provide a buccal cell sample occasions no constitutionally distinguishable intrusion.[7]  Thus, we find that the first search — the physical extraction of the DNA — is constitutional as to all of the Juveniles.

---

[6]    The Supreme Court appears never to have expressly held that the process of fingerprinting, as opposed to detaining an individual for that purpose, constitutes a search or seizure under the Fourth Amendment.  *Compare Hayes v. Florida*, 470 U.S. 811, 814 (1985) (stating that "fingerprinting, because it involves neither repeated harassment nor any of the probing into private life and thoughts that often marks interrogation and search, represents a much less serious intrusion upon personal security than other types of searches and detentions") *with United States v. Dionisio*, 410 U.S. 1, 14-15 (1973) (comparing voice exemplars to fingerprinting, and finding that neither involve significant probing such that a search has occurred). We assume for present purposes, however, that fingerprinting, albeit minimally intrusive, constitutes a search or seizure.

[7]    A probable cause finding is required under Juvenile Rule 23(D) for the detention of a juvenile.  *See Mario W.*, 228 Ariz. at 219 ¶¶ 40-41, 265 P.3d at 401 (Orozco, J., concurring in part and dissenting in part).  Not all juveniles, however, are detained before an advisory hearing.  *See* Ariz. R.P. Juv. Ct. 28(B)(1)-(2).  The order to submit buccal cell samples under § 8-238(A), as this case illustrates, may thus precede a probable cause determination, and it is that order, not any eventual detention, that the two juveniles challenged below.

17

**2.**

¶26     The State argues that once it has lawfully obtained the cell samples, the Fourth Amendment provides no greater bar to the processing of those samples and the extraction of the DNA profile than it does to the analysis of fingerprints.  But the State's reliance on the fingerprinting analogy here is misplaced.  Once fingerprints are obtained, no further intrusion on the privacy of the individual is required before they can be used for investigative purposes.  In this sense, the fingerprint is akin to a photograph or voice exemplar.  But before DNA samples can be used by law enforcement, they must be physically processed and a DNA profile extracted.  *See* Erin Murphy, *The New Forensics: Criminal Justice, False Certainty, and the Second Generation of Scientific Evidence*, 95 Cal. L. Rev. 721, 726–30 (2007).

¶27     This second search presents a greater privacy concern than the buccal swab because it involves the extraction (and subsequent publication to law enforcement nationwide) of thirteen genetic markers from the arrestee's DNA sample that create a DNA profile effectively unique to that individual. Ashley Eiler, Note, *Arrested Development: Reforming the Federal All-Arrestee DNA Collection Statute to Comply with the Fourth Amendment*, 79 Geo. Wash. L. Rev. 1201, 1220 (2011) ("[I]t is the nature of the information obtained by analyzing DNA samples for

18

inclusion in CODIS rather than the bodily intrusion of the initial collection that is problematic."). Because the State may constitutionally extract DNA profiles from the buccal swabs of those who are eventually convicted, the essential issue is whether the governmental interest in obtaining the DNA profiles before trial is sufficient to justify the second search.

¶28 For juveniles not eventually adjudicated delinquent, we can perceive no strong governmental interest in creating DNA profiles in the short period between the advisory hearing and the adjudication. The state and federal statutes providing for the expungement from databases of profiles obtained from arrestees not subsequently convicted recognize that these profiles should not be used for law enforcement purposes after adjudication, and given the constitutional presumption of innocence, we can find no stronger state interest in their use before adjudication. *Cf*. John D. Biancamano, Note, *Arresting DNA: The Evolving Nature of DNA Collection Statutes and Their Fourth Amendment Justifications*, 70 Ohio St. L.J. 619, 649 (2009) (noting that pre-trial profiling will include innocent arrestees).

¶29 Indeed, whether or not the juvenile is eventually adjudicated delinquent, the benefit to law enforcement of obtaining a DNA profile in the few weeks between the advisory hearing and trial is speculative at best. The buccal sample

19

will not typically be processed until weeks after it is obtained. In California, for example, it takes an average of thirty-one days to process a sample, *Haskell v. Brown*, 677 F. Supp. 2d 1187, 1201 (N.D. Cal. 2009), *aff'd sub nom. Haskell v. Harris*, 669 F.3d 1049 (9th Cir. 2012), and the State does not suggest that the process in Arizona is speedier. Adjudication of charges for juveniles not detained (as the Juveniles here) occurs within sixty days of the advisory hearing, Ariz. R.P. Juv. Ct. 29(B)(2), and under § 8-238(A), the juvenile is afforded five days after the advisory hearing to submit the buccal cell sample. Thus, the State's access to a profile will not be significantly delayed by deferring processing of the sample until the typical juvenile is adjudicated delinquent.

¶30     As noted above, some juveniles released pending adjudication may abscond, and a DNA profile may be invaluable in their identification and recapture. But because the State already will have obtained a buccal sample from those complying with a § 8-238 order, it may obtain a DNA profile from the sample once a juvenile fails to appear as required by law or court order. The State has not suggested that earlier lack of access to the profile will hinder recapture efforts. Indeed, because a juvenile accused of a serious offense but released pending adjudication will already have been determined by a judge not to pose a significant flight risk, *see* Ariz. R.P. Juv.

20

Ct. 28(D), the state interest in pre-adjudication processing of samples is even more speculative.

¶31     We recognize that DNA profiles are an important law enforcement tool for investigating crimes other than those charged. *See* 3 Wayne R. LaFave, Search & Seizure § 5.4 (4th ed. 2004) (noting that the true purpose of DNA databases has not "been primarily to supplement or supplant fingerprints as markers of true identity but rather to generate investigate leads"); David H. Kaye, *A Fourth Amendment Theory for Arrestee DNA and Other Biometric Databases*, 15 U. Pa. J. Const. L. (forthcoming Summer 2012), *available at* http://ssrn.com/abstract=2043259 ("Realistically, the sole purpose of arrestee sampling . . . is intelligence."). Having a DNA profile before adjudication may conceivably speed such investigations.  But one accused of a crime, although having diminished expectations of privacy in some respects, does not forfeit Fourth Amendment protections with respect to other offenses not charged absent either probable cause or reasonable suspicion.  An arrest for vehicular homicide, for example, cannot alone justify a warrantless search of an arrestee's financial records to see if he is also an embezzler.

¶32     Thus, we find no state interest sufficient to justify the serious intrusion on the privacy interests of the Juveniles occasioned by the second search – the extraction of the DNA

profile from the buccal swab before adjudication or failure to appear. The swab remains available for processing thereafter, and no exigency exists warranting an earlier suspicionless search.

**IV.**

¶**33** For the reasons above, we vacate the opinion of the court of appeals, and we remand the cases to the superior court for proceedings consistent with this opinion.

_____
Andrew D. Hurwitz, Vice Chief Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice